CHRISTIANSEN LAW, PLLC
Stephen K. Christiansen
James R. Farmer
311 South State Street, Ste. 250
Salt Lake City, Utah 84111
Telephone: 801.716.7016
Facsimile: 801.716.7017
steve@skclawfirm.com
james@skclawfirm.com
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| ANN DALTON and AMBITCHOUS, LLC, a Utah limited liability company,<br><br>　　　　Plaintiffs,<br>vs.<br><br>INNOV8TIVE NUTRITION, INC., a Texas corporation; LACORE ENTERPRISES, LLC, a Texas limited liability company; MIKE LOHNER, a resident of Texas; TERRY LACORE, a resident of Texas; JENIFER GRACE, a resident of Texas, and DOES 1-100,<br><br>　　　　Defendants. | **COMPLAINT**<br><br>**(JURY DEMAND)**<br><br>Case No.: _____<br><br>Judge: _____ |

Plaintiffs Ann Dalton and Ambitchous, LLC complain and allege as follows against defendants Innov8tive Nutrition, Inc., LaCore Enterprises, LLC, Mike Lohner, Terry LaCore, Jenifer Grace, and DOES 1-100.

## PARTIES AND RELEVANT NON-PARTY

1. Plaintiff Ann Dalton ("Dalton") is an individual citizen of Utah residing in Weber County, State of Utah, and is a citizen of the State of Utah.

2. Plaintiff Ambitchous, LLC ("Ambitchous") is a Utah limited liability company having a principal place of business in Weber County, State of Utah, solely owned by Dalton, and is therefore a citizen of the State of Utah.

3. Defendant Terry LaCore ("Terry LaCore") is an individual citizen of Texas believed to reside in Collin County, State of Texas, and is a citizen of the State of Texas.

4. Defendant Jenifer Grace ("Jenifer Grace") is an individual citizen of Texas believed to reside in Collin County, State of Texas, and is a citizen of the State of Texas.

5. Defendant Mike Lohner ("Lohner") is an individual citizen of Texas believed to reside in Tarrant County, State of Texas, and is a citizen of the State of Texas.

6. On information and belief, Defendant LaCore Enterprises, LLC ("LaCore") is a Texas limited liability company with a principal place of business in Collin County, State of Texas, solely owned by Terry LaCore, and is therefore a citizen of the State of Texas.

7. On information and belief, Defendant Innov8tive Nutrition, Inc. ("Innov8tive") is a Texas corporation with its principal place of business in Collin County, State of Texas, and is therefore a citizen of the State of Texas.

8. Innov8tive is a subsidiary of and controlled by LaCore.

9. Non-party Perfectly Posh, LLC ("Perfectly Posh" or "Posh") is an expired Utah limited liability company believed to have a principal place of business in Salt Lake County, State of Utah.

## JURISDICTION AND VENUE

10. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1332 and 1367.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

### Facts Concerning Dalton, the Separation Agreement, and Utah Third Judicial District Court Case No. 210903062

12. Dalton started Perfectly Posh in 2011 and was previously an owner and Chief Executive Officer of Perfectly Posh.

13. By 2016, under Dalton's leadership, Perfectly Posh realized revenues of approximately $135 million per year.

14. During the spring of 2016, Lohner met with Perfectly Posh. He advised beginning summer of 2016 and then became part of Momentum Advisors Perfectly Posh, LLC ("Momentum"), investor group / advisor, starting in fall of 2016,

15. At some point during October of 2016, Momentum invested money in Perfectly Posh and installed several new individuals in management positions, including placing Lohner on the Board of Directors of Perfectly Posh. Dalton, Sam Funk, and other executive team members at Posh soon learned that Lohner felt he needed to "hide" his association with Posh, and he proceeded to be vocal about relationships and opinions of his other close business relationships at a company where he was listed as Founder and Chairman of the Board. Additionally, Dalton has since learned via the U.S. Securities and Exchange Commission website that Lohner appears to have grossly misrepresented his resume / CV as an "expert" and authority in the direct selling space.

16. In November or December of 2016, Momentum installed new members of the management team at Perfectly Posh, including officers and directors who were Lohner's friends. This included individuals who took advantage of the company and made excessive expenditures in their own behalf while producing little or no results and waited out a one-year noncompete from a company to then quit in exactly one year and leave to work at a competitor. Momentum also referred and hired an incompetent CMO who was relocated to Utah, who then not only failed to

produce results but ultimately had to be let go after he made racist comments to a creative director. Momentum additionally hired an individual who was out of touch and unhelpful and terminated, only to be brought back by Lohner immediately after LaCore took over. Lohner promoted the CFO who was known to have taken over six figures worth product and colluding with a direct employee who had previously been caught lying to management team member David VanOostendorp ("Van") and the company. Lohner and LaCore promoted Van after knowing he had taken company product, kept it, and denied it.

17. As a result of several poor business decisions made by members of the Board of Directors and management team, including Lohner's failing to omni-channel Posh as was the stated reason for bringing him on the first place, Lohner introduced services, software, and other business relationships that he would personally benefit from financially if they were pressured on Posh. As a result of incompetent programs and software launches headed up by a Field Development Executive hired by Woodard and Lohner ("GS"), and other bad acts which were are believed to be intentional and designed to financially harm Perfectly Posh, Perfectly Posh's annual revenues plummeted from its record high in 2016 to less than one-third of its record high by 2019. These included actions such as removing Gordon Morton from the board and installing Momentum actors "VC" and "CT," at which time Lohner was repeatedly attempting to block incentive packages to competent executives and give himself ownership and an excessive salary for his "consulting" help while simultaneously terminating key employees and positions putatively to free up cash for the company.

18. Following repeated attempts to correct the poor decision-making by the Board of Directors and management team at Perfectly Posh, Dalton experienced repeated attempts by members of the Board of Directors and the management team, including Lohner and one or more

of DOES 1-100, to compel her to resign from Perfectly Posh. The ultimate action was offending an investment and strategic partnership deal that valued Posh at least more than seven times higher than the LOI deal that was entered into with LaCore less than three weeks after running off the known, strategic investor who had a proven track record of success, was the single largest investor in Perfectly Posh at launch, and served on the board.

19. Dalton resigned from Perfectly Posh on October 31, 2019, with her resignation becoming effective on December 1, 2019.

20. On or about January 30, 2020, Perfectly Posh and Dalton entered into that certain "Confidential Separation Agreement and General Release" (the "Separation Agreement").

21. The Separation Agreement formalized Dalton's separation from Perfectly Posh and set forth various obligations of both Perfectly Posh and Dalton. Posh immediately failed to honor the obligations therein by failing to provide lists and data. Dalton would later find out in the fall of 2022 that LaCore and Lohner changed the terms of Dalton's payback in her agreements, which they would sign a week after Dalton's separation agreement, according to Anna Brooks, counsel to LaCore, Posh, and Innov8tive.

22. On or about June 10, 2021, Perfectly Posh filed a Complaint (the "Complaint") in the Third Judicial District Court, Salt Lake County, State of Utah (Case No. 210903062; Judge Barry Lawrence) alleging various causes of action, including frivolous and non-specific claims of breach of the Separation Agreement, against Dalton.

23. On or about August 6, 2021, Dalton filed an "Amended Verified Answer and Amended Verified Counterclaim of Ann Dalton," which included a counterclaim (the "Counterclaim") against Perfectly Posh in response to the Complaint.

24. The Counterclaim included eleven (11) causes of action, including breach of the

Separation Agreement, defamation, and intentional interference with economic relations.

25. The relief requested in the Counterclaim included compensatory and punitive damages totaling over $4,000,000. This was done principally and foremost to hurt a post-resignation startup business of Dalton's called "Ambitchous," as the proceedings in the case evidence little or no effort to pursue the action. The parties engaged in a mediation on Friday, April 30, 2021, with Perfectly Posh and LaCore knowing that Posh would shortly be gutted but failing to communicate this and thereby mediating in bad faith, at great expense to Dalton, then announcing on the following Monday that Posh had stopped shipping orders.

26. There was no attempt to save Perfectly Posh. Meanwhile, LaCore was taking cash from Perfectly Posh and disparaging Dalton, saying she was going to take down Perfectly Posh knowing this was not in fact the case. This was a message repeated persistently to the Posh field leaders by Posh executives (Van, Sheehan, Karalee, others) from the time Dalton resigned until at least the time Posh was absorbed by Innov8tive – something Dalton would only find out in a statement filed by Van in fall of 2023 – and a fact that has deeply and irreparably damaged Dalton's reputation with the Posh field she built and worked with for more than a decade, and even with some employees. Van advised among other things that Dalton was going to start anew with LaCore and shut Posh down, which was untrue. Before the Posh sale was completed, LaCore had indicated to Dalton it would potentially be interested in funding Ambitchous through Dalton's separation agreement. Once the sale of Posh was completed, and LaCore had taken over, Posh and LaCore never attempted to start anything nor work with Dalton at all – even to honor the separation, let alone fund Ambitchous. Van failed to truthfully communicate the correct state of facts, claiming instead this is what Brooks told him. That false narrative continue at Posh for some four years.

27. On February 19, 2023, an order of default was entered against Perfectly Posh in Case No. 210903062 following the failure by Posh to retain replacement counsel.

28. On May 1, 2023, during an evidentiary hearing on damages, Judge Barry Lawrence issued a ruling from the bench, awarding Dalton approximately $1,250,000 in compensatory damages, prejudgment interest, attorney fees and costs in Case No. 210903062.

29. On June 1, 2023, Judge Lawrence issued an Order memorializing the May 1, 2023-ruling, awarding Dalton $1,260,615.46, with post-judgment interest accruing at 6.73% per annum from the time of entry until paid.

### Facts Concerning the Asset Purchase Agreement
### Between Perfectly Posh, Innov8tive, and LaCore

30. On or about May 10, 2022, Perfectly Posh and LaCore entered into that certain "Secured Convertible Promissory Note" (the "Promissory Note"), dated May 10, 2022.

31. The Promissory Note was secured by that certain "Security Agreement" (the "Security Agreement"), dated May 10, 2022, executed between Perfectly Posh and LaCore.

32. Pursuant to the Promissory Note, Perfectly Posh is obligated to pay LaCore an amount equal to Seven Hundred Thousand Dollars ($700,000).

33. On or about May 27, 2022, Perfectly Posh, Innov8tive and LaCore entered into that certain Asset Purchase Agreement (the "Asset Purchase Agreement"), dated May 27, 2022.

34. The Asset Purchase Agreement provides for the sale of all inventories, all database information, and all acquired intellectual property (the "Assets") held by Perfectly Posh to Innov8tive.

35. Recited consideration for sale of the Assets includes: (i) forgiveness of the debt evidenced by the Promissory Note; and (ii) payment by Innov8tive to Perfectly Posh of a sales override interest of up to Two Million Five Hundred Thousand Dollars ($2,500,000) (the "Sales

7

Override Interest"), subject to various set offs provided for in a sales override agreement executed by and between Perfectly Posh and Innov8tive (the "Sales Override Agreement").

36. The assets transferred to Innov8tive pursuant to the Asset Purchase Agreement constitute substantially all the assets owned by Perfectly Posh.

37. Upon information and belief, under the Asset Purchase Agreement, Perfectly Posh received nothing of value in return for transferring substantially all its assets to Innov8tive.

38. Following execution of the Asset Purchase Agreement, Innov8tive shut down Perfectly Posh product lines whose revenue was ostensibly intended to finance the Sales Override Interest.

39. Following execution of the Asset Purchase Agreement, Perfectly Posh was left or soon became a financially insolvent entity without any ability to pay creditors.

40. On information and belief, the intent of management of Perfectly Posh, Innov8tive, and LaCore was to drive Perfectly Posh into insolvency, both prior to and following execution of the Asset Purchase Agreement.  For example, each of Perfectly Posh, Innov8tive, and LaCore ignored and failed to enforce non-competition agreements that would have prevented Sterling Chord and Robert Hipple, owners and founders of Perfectly Posh, as well as several leading distributors of Perfectly Posh, from leaving Perfectly Posh in the fall of 2022 and immediately starting a new company, Align Skincare, that competes directly against Perfectly Posh.

41. On January 4, 2023, Jenifer Grace, Chief Operating Officer, and Chief Legal Officer for LaCore, acting as Manager for Perfectly Posh and under the direction of Terry LaCore, caused to be filed with the Utah Division of Corporations a Statement of Termination.

42. According to the Utah Division of Corporations, Perfectly Posh became an

8

expired entity as of January 4, 2023.

43. On information and belief, Lohner, Terry LaCore and Jenifer Grace, as officers or directors of one or more of Perfectly Posh, Innov8tive, and LaCore, and in concert with one or more of DOES 1-100, who were also officers or directors of one or more of Perfectly Posh, Innov8tive, and LaCore, acted with actual intent to hinder, delay, damage, and harm creditors, including Dalton, by rendering Perfectly Posh insolvent.

44. On information and belief, the assets transferred to Innov8tive pursuant to the Asset Purchase Agreement, were made with one or both of LaCore and Innov8tive acting as insiders in an attempt to recover assets of value equal to or greater than any funds loaned to Perfectly Posh pursuant to the Promissory Note.

45. On information and belief, one or both of LaCore and Innov8tive intend to relaunch Perfectly Posh on or about April 1, 2024.

## Facts Concerning Efforts by Lohner and Others to
## Intentionally Interfere with Dalton's Economic Relations

46. Following the execution of the Separation Agreement, Perfectly Posh, through efforts of Lohner and one or more of DOES 1-100, instructed its employees and high-level independent contractors to monitor Dalton and to report back as to her online activities, including Dalton's postings on one or more of Facebook, Instagram, and LinkedIn; on information and belief, these same employees and high-level independent contractors were even financially incentivized to make such reports to Lohner and one or more of DOES 1-100.

47. Before and following the time Dalton resigned from her positions at Perfectly Posh, Lohner and one or more of DOES 1-100 harassed Dalton via defamatory and disparaging statements made both publicly and to Perfectly Posh employees, distributors, and others. Lohner ran off a much better investment from significant investor (Clarke) in favor of a worse deal from

LaCore. The LOI with LaCore was signed within days of Lohner and Momentum intentionally offending the Clarke group.

48. Lohner, for example, contacted each shareholder, debt holder, and owner of Perfectly Posh in early 2021 and several other individuals in late 2021 to defame and disparage Dalton, falsely claiming she had been fired for bad acts and falsely claiming she was responsible for the financial demise of Perfectly Posh.

49. Following the time Dalton resigned from her positions at Perfectly Posh, Lohner and one or more of DOES 1-100 contacted Dalton's friends, business associates, employer, neighbors, members of her church congregation, and others, disparaging Dalton, blaming her for the failure of Perfectly Posh and interfering with her efforts to get Ambitchous successfully started. Posh subpoenaed Dalton's friend to obtains copies of a response to the lawsuit that was filed publicly and all of its associations had full access to, ostensibly just to bully Dalton.

50. Lohner and one or more of DOES 1-100 interfered with dozens of potential customers of Dalton's new business, including threatening to fire and actually firing consultants of Perfectly Posh for as little as attending a live video stream or liking a social media post, purchasing a product Posh didn't offer, and having anything to do with Dalton or her post-resignation startup business; some examples of individuals fired by Perfectly Posh under such circumstances include, but are not limited to: Jordan Bridge, Kelli Fangmann, Michelle Boyd, Anita Squire, Obi Kalu, Denise Aiken, Connie Brown, Jennifer Zimmerman, April Vicars, Michelle Ditmer, Jason Shankland, and Kole Ann, among others.

51. Following execution of the Settlement Agreement, and for more than eighteen months, Perfectly Posh, through management, and in concert with Terry LaCore and Jenifer Grace, refused to transfer to Dalton the "Ambitchous" Trademark that Dalton designed when she

was the owner of Perfectly Posh; this was done for the purpose of hampering Dalton's ability to grow her post-resignation startup business. Bad acts and delaying tactics included attempting to fool Dalton into pushing a licensing and use agreement for the Ambitchous mark versus actually signing it over to her ownership as specified in her separation, forcing Dalton to obtain specialized trademark and IP counsel at additional expense to ensure the mark was being fully turned over.

52. Perfectly Posh, through the directives and actions of Lohner, Terry LaCore and Jenifer Grace, and one or more of DOES 1-100, has refused to pay Dalton amounts owed to her under the Separation Agreement for the purpose of placing her and her family in a precarious financial position and with the intent to hamper Dalton's ability to fund and grow her post-resignation startup business, causing financial damage to Dalton and Ambitchous.

53. Perfectly Posh, through the directives and actions of Lohner, Terry LaCore and Jenifer Grace, and one or more of DOES 1-100, interfered with, hindered, and ultimately prevented Dalton from successfully building her post-resignation startup business, causing financial damage to Dalton and Ambitchous.

54. Perfectly Posh, through the directives and actions of Lohner, Terry LaCore and Jenifer Grace, and one or more of DOES 1-100, interfered with, hindered, and ultimately prevented Dalton from receiving the benefits owed her through the Separation Agreement, causing financial damage to Dalton and Ambitchous. This included leaving Dalton's name on expensive, unpaid tax bills and other obligations to bully Dalton as late as fall of 2023.

55. The defamatory and disparaging actions of Lohner and one or more of DOES 1-100 have intentionally damaged Dalton's reputation in the industry and have scared off existing and potential customers, clients, and employees of Dalton's post-resignation startup business,

causing financial damage to Dalton and Ambitchous.

56. The defamatory and disparaging actions of Lohner, in concert with Terry LaCore and Jenifer Grace, and one or more of DOES 1-100, resulted in Dalton having to close her post-resignation startup business, causing financial damage to Dalton and Ambitchous.

57. Lohner, individually and as an executive of Perfectly Posh, and in concert with one or more of Terry LaCore, Jenifer Grace and DOES 1-100, prevented Dalton from receiving the compensation owed to her by Perfectly Posh pursuant to the Separation Agreement, as well as pursuant to the January 2017 employment agreement between Perfectly Posh and Dalton, causing financial damage to Dalton.

58. On information and belief, LaCore and Innov8tive have now reopened Posh under former President Andrew McBride to further monetize the IP and liquidate the product without having to compensate those to whom Perfectly Posh was indebted, including Dalton. LaCore is apparently attempting to utilize the resurrection of the IP to push what appear to be lower-quality Posh products created by Posh under the two-time previously failed ownership of LaCore and further glean monies from inferior and unpopular products. This is done claiming the returning "founder" is "re-launching" the same "old" company – which it objectively is not – consequently doing further damage to the reputation of the Posh brand and IP originally and successfully built by Dalton and dismantled by Momentum. The returning "founder" in his previous tenure with the "old" Posh developed no products ever, and led no marketing efforts for the company. He was in fact, responsible for operations, finance, and technical performance of the website and other mechanical functions of the "original" Posh business. Those systems needed to be built and replaced when Momentum invested in Posh in 2016.

59. The claims advanced herein are advanced in the alternative under Fed. R. Civ. P. 8 to the extent necessary.

# FIRST CAUSE OF ACTION
**(Voidable Transfer – against all Defendants)**

60. Plaintiffs incorporate as if fully set forth herein all allegations in this Complaint.

61. On May 27, 2022, Perfectly Posh executed an agreement to sell all its assets to Innova8tive pursuant to the Asset Purchase Agreement.

62. Upon information and belief, Perfectly Posh received nothing of value in exchange for the transactions occurring pursuant to the Asset Purchase Agreement.

63. Under Utah Code Ann. §§ 25-6-202(1), (2) and (3), the Asset Purchase Agreement and ensuing transaction between Perfectly Posh and Innov8tive constitute a voidable transaction.

64. Perfectly Posh, via the efforts of Lohner, Terry LaCore, Jenifer Grace, Innov8tive, LaCore and one or more of DOES 1-100, made the transfer of its assets with actual intent to harm both Dalton and other creditors supported by the following:

   a. Under the Asset Purchase Agreement, Perfectly Posh agreed to sell substantially all its assets to Innov8tive.

   b. Innov8tive is owned by parent company LaCore, which also held an ownership stake in Perfectly Posh at the time the Asset Purchase Agreement was executed.

   c. Before the Asset Purchase Agreement was executed, Dalton filed her Answer and Counterclaim in Perfectly Posh's original action against her.

   d. All Defendants were aware of the Counterclaim against Perfectly Posh when the Asset Purchase Agreement was executed.

13

    e.    The transfer of assets under the Asset Purchase Agreement contemplated the transfer of substantially all the assets owned or controlled by Perfectly Posh.

    f.    Upon information and belief, under the Asset Purchase Agreement, Perfectly Posh did not receive any value for transferring all its assets to Innov8tive.

    g.    Following execution of the Asset Purchase Agreement, Innov8tive shut down Perfectly Posh product lines whose revenue was intended to finance payments to Perfectly Posh under the Asset Purchase Agreement.

    h.    Perfectly Posh was intentionally forced by LaCore and Perfectly Posh to administratively expire as an entity according to the Utah Division of Corporations.

    i.    Perfectly Posh had negative EBITDA of $647,788 for Quarter 1 of 2022 and negative EBITDA of $2,051,945 for Fiscal Year 2021.

    j.    As of March 31, 2022, Perfectly Posh was unable to pay critical vendors and was, in essence, insolvent, largely due to the actions of Lohner, Innov8tive, LaCore and one or more of Terry LaCore, Jenifer Grace and DOES 1-100.

65.    On information and belief, Lohner, and one or more of Terry LaCore, Jenifer Grace and DOES 1-100, as corporate agents, conspired with or aided and abetted Perfectly Posh, Innov8tive and LaCore to harm both Dalton and other creditors.

66.    Given the foregoing, Dalton is entitled to:

    a.    Pursuant to Utah Code Ann. § 25-6-303(1)(a), an order from this Court voiding the Asset Purchase Agreement;

    b.    Pursuant to Utah Code Ann. § 25-6-303(1)(b), an attachment against the assets transferred pursuant to the Asset Purchase Agreement;

   c. Pursuant to Utah Code Ann. § 25-6-303(1)(c)(i), an injunction, enjoining further disposition by Innov8tive of the assets transferred pursuant to the Asset Purchase Agreement;

   d. Pursuant to Utah Code Ann. § 25-6-303(1)(c)(ii), appointment of a receiver to take control of the assets transferred pursuant to the Asset Purchase Agreement; and

   e. Pursuant to Utah Code Ann. § 25-6-303(2), execution of the assets transferred pursuant to the Asset Purchase Agreement to satisfy the judgment obtained by Dalton in Case No. 210903062.

  67. Given the foregoing, Defendants, jointly and severally, are liable for all damages occurring to Perfectly Posh, such damages being sufficient to place Perfectly Posh in the same financial condition it enjoyed prior to execution of the Asset Purchase Agreement.

  68. Given the foregoing, Defendants, jointly and severally, are liable for all damages occurring to Perfectly Posh, such damages including the judgment obtained by Dalton in Case No. 210903062.

**SECOND CAUSE OF ACTION**
**(Intentional Interference with Economic Relations – against Lohner, Terry LaCore and Jenifer Grace, and DOES 1-100)**

  69. Plaintiffs incorporate as if fully set forth herein all allegations in this Complaint.

  70. Lohner, a Perfectly Posh executive and board member, in concert with Terry LaCore and Jenifer Grace, one or more of DOES 1-100, tortiously interfered with Dalton's economic relations.

  71. Lohner threatened Dalton, both before and after she had resigned from Perfectly Posh, that he would make it difficult for her to maintain a favorable reputation in the industry; he

also told Dalton he would make it difficult for her to engage in any work of her own in the direct sales industry.

72.     Lohner followed through with those threats in his discussions with Perfectly Posh's board. His distasteful communications with Perfectly Posh board members wrongfully soured their views of Dalton. Lohner conveyed that same sentiment to Terry LaCore and Jenifer Grace which demolished an opportunity Dalton had previously fostered with LaCore. On information and belief, Lohner through mutual association ran off a potential investor in Arizona in July 2023 at a loss of $500,000 to $2 million, as well as doing reputational damage to Dalton via conversations about Dalton with shareholders and owners of Perfectly Posh prior to and post Dalton's disassociation with Posh and Momentum.

73.     All these efforts were made with the malicious intent of hampering Dalton's post-resignation startup business and her economic relations.

74.     Dalton's economic relations have been damaged from the interference by Lohner, Terry LaCore, Jenifer Grace, and one or more of DOES 1-100, entitling Dalton to judgment against them, in amounts to be shown at trial, such judgment being for compensatory damages not less than $1,250,000.

75.     The conduct of Lohner, Terry LaCore and Jenifer Grace, and one or more of DOES 1-100 was malicious and intentional or manifesting of a knowing and reckless indifference toward Dalton, entitling Dalton to an award of punitive damages in an amount to be shown at trial.

## THIRD CAUSE OF ACTION
### (Civil Conspiracy – Against All Defendants)

76.     Plaintiffs incorporate as if fully set forth herein all allegations in this Complaint.

77.     Defendants constitute two or more legal persons.

78. Defendants intended to accomplish an object, namely to deprive Plaintiffs of assets that rightfully belong to them.

79. Based on the conduct described herein, two or more of these Defendants had a meeting of the minds on the object or course of action to be accomplished.

80. Based on the conduct described herein, two or more of these Defendants engaged in one or more unlawful overt acts.

81. As a result of these Defendants' conduct, Plaintiffs have suffered damages in an amount to be proven at trial.

82. Defendants' conduct was and is willful, wanton, malicious, and oppressive, entitling Plaintiffs to punitive damages in an amount to be determined by the trier of fact in excess of compensatory damages.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

### On the First Claim for Relief

1. An order voiding or rescinding the Asset Purchase Agreement;

2. An order enjoining further disposition by Innov8tive of the assets transferred pursuant to the Asset Purchase Agreement;

3. An order attaching the assets transferred pursuant to the Asset Purchase Agreement;

4. An order appointing a receiver to take control of the assets transferred pursuant to the Asset Purchase Agreement.

5. An order of execution of the assets transferred pursuant to the Asset Purchase Agreement to satisfy the judgment obtained by Dalton in Case No. 210903062.

6. An order finding all Defendants liable, jointly and severally, for all damages occurring to Perfectly Posh pursuant to the Asset Purchase Agreement, such damages including the amount of the judgment obtained by Dalton in Case No. 210903062.

### On the Second Claim for Relief

7. Compensatory damages against Lohner, Terry LaCore and Jenifer Grace, and one or more of DOES 1-100, in an amount in excess of $1,250,0000, to be determined at trial; and

8. Punitive damages against Lohner, Terry LaCore and Jenifer Grace in an amount to be determined at trial.

### On the Third Claim for Relief

9. Compensatory damages against Lohner, Terry LaCore and Jenifer Grace, and one or more of DOES 1-100, in an amount in excess of $1,250,000, to be determined at trial; and

10. Punitive damages against Lohner, Terry LaCore and Jenifer Grace, and one or more of DOES 1-100, in an amount to be determined at trial.

### Additional Relief Against All Defendants

11. An award of prejudgment and post-judgment interest against all Defendants as may be allowed by law;

12. Punitive damages against all Defendants in an amount to be determined at trial;

13. An award of attorney fees and costs against all Defendants as may be allowed by law; and

14. Other relief as the Court deems just and equitable under the circumstances.

DATED March 20, 2024.

        CHRISTIANSEN LAW, PLLC

        By:    /s/ Stephen K. Christiansen
        Stephen K. Christiansen
        Utah Bar No. 6512
        steve@skclawfirm.com
        James R. Farmer
        Utah Bar No. 8592
        james@skclawfirm.com
        311 S. State Street, Suite 250
        Salt Lake City, UT 84111
        Telephone: 801.716.7016
        Facsimile: 801.716.7017
        *Attorneys for Plaintiffs*