CHRISTIANSEN LAW, PLLC
Stephen K. Christiansen
James R. Farmer
311 South State Street, Ste. 250
Salt Lake City, Utah 84111
Telephone: 801.716.7016
Facsimile: 801.716.7017
steve@skclawfirm.com
james@skclawfirm.com
*Attorneys for Plaintiffs*

---

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| ANN DALTON and AMBITCHOUS, LLC, a Utah limited liability company,<br><br>                    Plaintiffs,<br>vs.<br><br>PP HOLDINGS CO. INC., a Texas corporation, dba PERFECTLY POSH; INNOV8TIVE NUTRITION, INC., a Texas corporation; LACORE ENTERPRISES, LLC, a Texas limited liability company; MIKE LOHNER, a resident of Texas; TERRY LACORE, a resident of Texas; JENIFER GRACE, a resident of Texas; ANNA BROOKS, a resident of Texas; and DOES 1-100,<br><br>                    Defendants. | **AMENDED COMPLAINT**<br><br>**(JURY DEMAND)**<br><br>Case No.: 3:24-cv-00687-N<br><br>Judge David C. Godbey |

---

Plaintiffs Ann Dalton and Ambitchous, LLC complain and allege as follows against defendants PP Holdings Co., Inc., dba Perfectly Posh, Innov8tive Nutrition, Inc., LaCore Enterprises, LLC, Mike Lohner, Terry LaCore, Jenifer Grace, Anna Brooks, and DOES 1-100.

## PARTIES AND RELEVANT NON-PARTY

1.      Plaintiff Ann Dalton ("Dalton") is an individual residing in Weber County, State of Utah, and a citizen of the State of Utah.

2.      Plaintiff Ambitchous, LLC ("Ambitchous") is a Utah limited liability company having a principal place of business in Weber County, State of Utah, whose sole member is Dalton, and which is therefore a citizen of the State of Utah.

3.      On information and belief, Defendant Terry LaCore ("Terry LaCore") is an individual believed to reside in Collin County, State of Texas, and a citizen of the State of Texas.

4.      On information and belief, Defendant Jenifer Grace ("Jenifer Grace") is an individual believed to reside in Collin County, State of Texas, and a citizen of the State of Texas.

5.      On information and belief, Defendant Mike Lohner ("Lohner") is an individual believed to reside in Tarrant County, State of Texas, and a citizen of the State of Texas.

6.      On information and belief, Defendant Anna Brooks ("Brooks") is an individual believed to reside in Collin County, State of Texas, and a citizen of the State of Texas.

7.      On information and belief, Defendant PP Holdings Co., Inc. ("PP Holdings") is a Texas corporation, dba as Perfectly Posh ("Perfectly Posh TX"), with a principal place of business in Collin County, State of Texas, whose sole director is Terry LaCore, and which is therefore a citizen of the State of Texas.

8.      On information and belief, Defendant LaCore Enterprises, LLC ("LaCore") is a Texas limited liability company with a principal place of business in Collin County, State of Texas, whose sole member is Terry LaCore, and which is therefore a citizen of the State of Texas.

9.      On information and belief, Defendant Innov8tive Nutrition, Inc. ("Innov8tive") is a Texas corporation with its principal place of business in Collin County, State of Texas, and which is therefore a citizen of the State of Texas.

10.     On information and belief, Innov8tive is a subsidiary of and controlled by

LaCore.

11.     Non-party Perfectly Posh, LLC ("Perfectly Posh") is an expired Utah limited liability company believed to have a principal place of business in Salt Lake County, State of Utah.

## JURISDICTION AND VENUE

12.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1332 and 1367.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

### Facts Concerning Dalton, the Separation Agreement, and Utah Third Judicial District Court Case No. 210903062

14.     Dalton started Perfectly Posh in 2011 and was previously an owner and Chief Executive Officer of Perfectly Posh.

15.     By 2016, under Dalton's leadership, Perfectly Posh realized revenues of approximately $135 million per year.

16.     During the spring of 2016, Lohner met with management of Perfectly Posh.  He advised Perfectly Posh beginning summer of 2016 and then became part of Momentum Advisors Perfectly Posh, LLC ("Momentum"), an investor and advisory group, starting in fall of 2016.

17.     At some point during October of 2016, Momentum invested money in Perfectly Posh and installed several new individuals in management positions, including placing Lohner on the Board of Directors of Perfectly Posh.

18.     In November or December of 2016, Momentum installed new members of the management team at Perfectly Posh, including officers and directors who were acquaintances of Lohner.  These new members included individuals who took advantage of the company, made excessive expenditures on their own behalf while producing little or no results beneficial to

Perfectly Posh, waited out a one-year noncompete from a different company, only to then quit in exactly one year and leave Perfectly Posh to work at a competitor.

19.      Momentum also hired a Chief Marketing Officer, Randy Baker, who was relocated to Utah, and who then not only failed to produce results beneficial to Perfectly Posh, but ultimately was let go after he made racist comments to a creative director.

20.      Momentum additionally hired an individual, Pat Sheehan, who was not productive and therefore terminated, only to be brought back by Lohner immediately after Terry LaCore and LaCore assumed control of Perfectly Posh via a financial investment in Perfectly Posh.  Lohner also promoted a Chief Financial Officer, David Van Oostendorp, who was known to have misappropriated over $100,000 worth of product, who colluded with an employee in the misappropriation, and who had previously been caught lying to management and the company. Lohner and LaCore nevertheless promoted VanOostendorp ("Van") after knowing he had taken company product, kept it, and denied it.

21.      As a result of several poor business decisions made by members of the Board of Directors and management team, including Lohner's failure to omni-channel Perfectly Posh, as was the stated reason for bringing him on in the first place, Lohner introduced to Perfectly Posh services, software, and other business relationships that he would personally benefit from financially.

22.      As a result of poorly designed programs and software launches headed up by a Field Development Executive, Gaya amarasingha, hired by Lohner and Jonee Woddard, and bad acts that are believed to have been intentional and designed to financially harm Perfectly Posh, Perfectly Posh's annual revenues plummeted from its record high in 2016 to less than one-third of its record high by 2019.  These acts included removing Gordon Morton from the board and

installing Momentum actors, Vaughn Crowe and Connie Tang.

23.    At about the same time, Lohner repeatedly attempted to block incentive packages to competent executives and to provide himself ownership and an excessive salary for his "consulting" services, while simultaneously terminating key employees and positions, ostensibly to free up cash for the company.

24.    Following repeated attempts to correct the poor decision-making by the Board of Directors and management team at Perfectly Posh, Dalton experienced repeated attempts by members of the Board of Directors and the management team, including Lohner and one or more of DOES 1-100, to compel her to resign from Perfectly Posh.

25.    The ultimate act of poor decision making was offending an investment and strategic partnership deal that valued Perfectly Posh at least seven times higher than the investment deal that was ultimately entered into with LaCore, which occurred less than three weeks after running off a known, strategic investor (Clarke Capital) who had a proven track record of success, was the single largest investor in Perfectly Posh, and served on the board.

26.    Dalton resigned from Perfectly Posh on October 31, 2019, with her resignation becoming effective on December 1, 2019.

27.    On or about January 30, 2020, Perfectly Posh and Dalton entered into that certain "Confidential Separation Agreement and General Release" (the "Separation Agreement").

28.    The Separation Agreement formalized Dalton's separation from Perfectly Posh and set forth various obligations of both Perfectly Posh and Dalton. Perfectly Posh immediately failed to honor the obligations therein by, among other things, failing to provide Dalton information properly requested by her – *e.g.*, listings of products relating to the non-compete provision in the Separation Agreement. In the fall of 2022, LaCore and Lohner unilaterally

changed or failed to abide by the terms of the Separation Agreement by providing for improper delays in payments to Dalton – *e.g.*, making or accelerating payments to persons similarly situated with Dalton while not paying Dalton.

29.     On or about June 10, 2021, Perfectly Posh filed a Complaint (the "Complaint") in the Third Judicial District Court, Salt Lake County, State of Utah (Case No. 210903062; Judge Barry Lawrence) alleging various causes of action, including claims of breach of the Separation Agreement, against Dalton.

30.     On or about August 6, 2021, Dalton filed an "Amended Verified Answer and Amended Verified Counterclaim of Ann Dalton," which included a counterclaim (the "Counterclaim") against Perfectly Posh in response to the Complaint.

31.     The Counterclaim included eleven (11) causes of action, including breach of the Separation Agreement, defamation, and intentional interference with economic relations.

32.     The relief requested in the Counterclaim included compensatory and punitive damages totaling over $4,000,000.

33.     The Complaint was filed principally and foremost to hurt Dalton and the post-resignation startup business of Dalton's called "Ambitchous."  The proceedings in the case evidence little or no effort by Perfectly Posh to genuinely pursue the action.

34.     The parties engaged in a mediation on Friday, April 29, 2022.

35.     At the time of the mediation, Perfectly Posh and Terry LaCore knew that Perfectly Posh would soon be rendered insolvent.  Terry LaCore and Perfectly Posh, however, failed to communicate this to Dalton and thereby mediated in bad faith, at substantial expense to Dalton, and then announced on or about the following Monday, May 2, 2022, that Perfectly Posh had stopped shipping orders.

36.     Through the first half of 2022, there was no attempt made to save Perfectly Posh from becoming insolvent.  Meanwhile, Terry LaCore was taking cash from Perfectly Posh and disparaging Dalton, saying she was going to take down Perfectly Posh while knowing this was not true.  This was a message repeated persistently to Perfectly Posh field leaders by Perfectly Posh executives, including by Van, from the time Dalton resigned until at least the time Perfectly Posh was merged or otherwise absorbed into Innov8tive – something Dalton would only find out through a statement published by Van in fall of 2023.

37.     This message has deeply and irreparably damaged Dalton's reputation with the Perfectly Posh field she built and worked with for more than a decade, as well as with some former employees.  Van messaged, among other things, that Dalton was going to start anew with Terry LaCore and shut Perfectly Posh down, which was untrue.

38.     Before the assets of Perfectly Posh were transferred via the Asset Purchase Agreement, *infra*, Terry LaCore indicated to Dalton he was interested in funding Ambitchous.  Once the asset transfer was complete, Terry LaCore never attempted to work with Dalton or honor the Separation Agreement, let alone fund Ambitchous.

39.     On February 19, 2023, an order of default was entered against Perfectly Posh in Case No. 210903062 following the failure by Perfectly Posh to retain replacement counsel and otherwise participate in the litigation it initiated.

40.     On May 1, 2023, during an evidentiary hearing on damages, Judge Barry Lawrence issued a ruling from the bench, awarding Dalton approximately $1,250,000 in compensatory damages, prejudgment interest, attorney fees and costs in Case No. 210903062.

41.     On June 1, 2023, Judge Lawrence issued an Order memorializing the May 1, 2023-ruling, awarding Dalton $1,260,615.46, with post-judgment interest accruing at 6.73% per

annum from the time of entry until paid.

**Facts Concerning the Asset Purchase Agreement**
**Between Perfectly Posh, Innov8tive, and LaCore**

42.　　On or about May 10, 2022, Perfectly Posh and LaCore entered into that certain "Secured Convertible Promissory Note" (the "Promissory Note"), dated May 10, 2022.

43.　　The Promissory Note was secured by that certain "Security Agreement" (the "Security Agreement"), dated May 10, 2022, executed between Perfectly Posh and LaCore.

44.　　Pursuant to the Promissory Note, Perfectly Posh was obligated to pay LaCore an amount equal to Seven Hundred Thousand Dollars ($700,000).

45.　　On or about May 27, 2022, Perfectly Posh, Innov8tive and LaCore entered into that certain Asset Purchase Agreement (the "Asset Purchase Agreement"), dated May 27, 2022.

46.　　The Asset Purchase Agreement provides for the sale of all inventories, all database information, and all acquired intellectual property (the "Assets") held by Perfectly Posh to Innov8tive.

47.　　Recited consideration for sale of the Assets includes: (i) forgiveness of the debt evidenced by the Promissory Note; (ii) payment of a debt owed by Perfectly Posh to Maersk in the amount of $835,161; and (iii) payment by Innov8tive to Perfectly Posh of a sales override interest of up to Two Million Five Hundred Thousand Dollars ($2,500,000) (the "Sales Override Interest"), subject to various set offs provided for in a sales override agreement executed by and between Perfectly Posh and Innov8tive (the "Sales Override Agreement").

48.　　The assets transferred to Innov8tive pursuant to the Asset Purchase Agreement constitute substantially all the assets owned by Perfectly Posh.

49.　　Upon information and belief, under the Asset Purchase Agreement, Perfectly Posh did not receive consideration reasonably equivalent in value in return for transferring

8

substantially all its assets to Innov8tive.

50. Following execution of the Asset Purchase Agreement, Innov8tive shut down Perfectly Posh product lines whose revenue was ostensibly intended to finance the Sales Override Interest.

51. Following execution of the Asset Purchase Agreement, Perfectly Posh was left or soon became a financially insolvent entity without any ability to pay creditors.

52. On information and belief, the intent of management of Perfectly Posh, Innov8tive, and LaCore was to drive Perfectly Posh into insolvency, both prior to and following execution of the Asset Purchase Agreement.

53. By way of example of the intent to drive Perfectly Posh into insolvency each of Perfectly Posh, Innov8tive, and LaCore ignored and failed to enforce non-competition agreements that would have prevented Sterling Chord and Robert Hipple, owners and founders of Perfectly Posh, as well as several leading distributors of Perfectly Posh, from leaving Perfectly Posh in the fall of 2022 to start a new company, Align Skincare, that competes directly against Perfectly Posh.

54. On January 4, 2023, Jenifer Grace, Chief Operating Officer, and Chief Legal Officer for LaCore, acting as Manager for Perfectly Posh and under the direction of Terry LaCore, caused to be filed with the Utah Division of Corporations a Statement of Termination.

55. According to the Utah Division of Corporations, Perfectly Posh became an expired entity as of January 4, 2023.

56. On information and belief, Lohner, Terry LaCore, Anna Brooks, and Jenifer Grace, as officers, directors or representatives of one or more of Perfectly Posh, Innov8tive, and LaCore, and in concert with one or more of DOES 1-100, who were also officers, directors or

representatives of one or more of Perfectly Posh, Innov8tive, and LaCore, acted with actual intent to hinder, delay, or defraud, or damage or harm, creditors, including Dalton, by rendering Perfectly Posh insolvent.

57.     On information and belief, the assets transferred to Innov8tive pursuant to the Asset Purchase Agreement, were made with one or both of LaCore and Innov8tive acting as insiders in an attempt to recover assets of value equal to or greater than any funds loaned to Perfectly Posh pursuant to the Promissory Note.

58.     On information and belief, one or both of LaCore and Innov8tive relaunched Perfectly Posh, on or about April 15, 2024, through PP Holdings, dba Perfectly Posh TX.

59.     On information and belief, the assets transferred from Perfectly Posh to Innov8tive via the Asset Purchase Agreement were subsequently transferred to PP Holdings and are now being marketed and sold through PP Holdings, dba Perfectly Posh TX.

### Facts Concerning Plaintiffs' Alter Ego Theory of Control over Perfectly Posh and the Rendering of Perfectly Posh Insolvent.

60.     On information and belief, while President of Perfectly Posh, Van Oostendorp was an officer or director in name only, and had no control over the company's assets, bill paying, human resources, hiring and firing, and all key and even daily routine decisions.

61.     On information and belief, during his presidency at Perfectly Posh, all decisions concerning control over the company's assets, bill paying, human resources, hiring and firing, and all key and even daily routine decisions were made by LaCore executives, including Terry LaCore, Jenifer Grace, and Anna Brooks.

62.     On information and belief, during his presidency at Perfectly Posh, Van Oostendorp was not allowed to approve or pay Perfectly Posh's bills without permission from LaCore executives.

63.     On information and belief, at about the time of the Separation Agreement and thereafter, Terry LaCore began siphoning funds from Perfectly Posh and ruled Perfect Posh, together with Jenifer Grace and Anna Brooks, with near complete authority, making nearly all of Perfectly Posh's corporate governance and daily operational decisions.

64.     On information and belief, Jenifer Grace owned or otherwise controlled a large shareholder stake in Innov8tive, and she, Anna Brooks, and Terry LaCore, as well as Innov8tive and LaCore, were all acting as insiders in depriving Perfectly Posh of operational cash reserves.

65.     On information and belief, Terry LaCore, Anna Brooks and Jenifer Grace, by the start of 2022, took all of the cash reserves out of Perfectly Posh and left the company unable to meet its obligations as they came due.

66.     On information and belief, by early 2022, Perfectly Posh had cash flow problems and no readily available lines of credit.

67.     On information and belief, in early March 2022, Perfectly Posh's bank notified it that it would have insufficient funds to cover payroll expenses and a large check that had been issued, and that additional funds were needed to be deposited immediately.

68.     On information and belief, in order to enable Perfectly Posh to cover imminent expenses for commissions and sales tax, Van Oostendorp, through two disbursements, on March 7 and 8, 2022, personally loaned Perfectly Posh $162,500.00.

69.     On information and belief, as of March 9, 2022, despite Van Oostendorp having already loaned the company $162,500.00, Perfectly Posh was still in dire need of cash to cover expenses.

70.     On information and belief, on March 9, 2022, Van Oostendorp sent an email to the managers of Perfectly Posh, informing them of the loans he had made and requesting that

11

LaCore make a bridge loan to Perfectly Posh in the amount of $500,000.00.

71.     On information and belief, on March 9, 2022, LaCore agreed to loan Perfectly Posh half the requested amount, or $250,000.00, which proceeds were wired on or about that same day, March 9, 2022.

72.     On information and belief, as of March 9, 2022, despite the loans made by Van Oostendorp and LaCore, Perfectly Posh still lacked sufficient funds to cover its operating expenses.

73.     On information and belief, prior to and by on or about April 26, 2022, Van Oostendorp loaned Perfectly Posh a collective sum of $392,500.00 and received a partial repayment of $80,000 (on April 26, 2022), leaving a balance due from Perfectly Posh of $312,500.

74.     On information and belief, on or about May 4, 2022, Van Oostendorp again contacted the management of Perfectly Posh, informing the managers that despite the loans from him and LaCore, Perfectly Posh still lacked sufficient cash to operate.

75.     On information and belief, on or about May 10, 2022, LaCore loaned Perfectly Posh an additional $300,000.

76.     On information and belief, throughout May 2022, Van Oostendorp continued to inform Perfectly Posh's managers of pressing capital needs.

77.     On November 18, 2022, a default judgment was entered against Perfectly Posh and in favor of Van Oostendorp in the amount of $313,205.00, with post-judgment interest continuing to accrue at 10% per annum.

### Facts Concerning Efforts by Lohner and Others to Intentionally Interfere with Dalton's Economic Relations

78.     Following execution of the Separation Agreement, Perfectly Posh, through efforts

12

of Lohner and one or more of DOES 1-100, instructed its employees and high-level independent contractors to monitor Dalton and to report back as to her online activities, including Dalton's postings on one or more of Facebook, Instagram, and LinkedIn; on information and belief, these same employees and high-level independent contractors were even financially incentivized to make such reports to Lohner and one or more of DOES 1-100.

79.    Before and following the time Dalton resigned from her positions at Perfectly Posh, Lohner and one or more of DOES 1-100 harassed Dalton via defamatory and disparaging statements made both publicly and to Perfectly Posh employees, distributors, and others. Lohner also ran off a much better investment from significant investor (Clarke Capital) in favor of a worse deal from LaCore. The deal with LaCore was signed within days of Lohner and Momentum intentionally offending the Clarke group.

80.    Lohner also contacted each shareholder, debt holder, and owner of Perfectly Posh in early 2021 and several other individuals in late 2021 to defame and disparage Dalton, falsely claiming she had been fired for bad acts and falsely claiming she was responsible for the financial demise of Perfectly Posh.

81.    Following the time Dalton resigned from her positions at Perfectly Posh, Lohner and one or more of DOES 1-100 contacted Dalton's friends, business associates, employer, neighbors, members of her church congregation, and others, disparaging Dalton, blaming her for the failure of Perfectly Posh and interfering with her efforts to get Ambitchous successfully started.

82.    Lohner and one or more of DOES 1-100 interfered with dozens of potential customers of Dalton's new business, including threatening to fire and actually firing consultants of Perfectly Posh for as little as attending a live video stream or liking a social media post,

purchasing a product Perfectly Posh didn't offer, and having anything to do with Dalton or her post-resignation startup business; some examples of individuals fired by Perfectly Posh under such circumstances include, but are not limited to: Jordan Bridge, Kelli Fangmann, Michelle Boyd, Anita Squire, Obi Kalu, Denise Aiken, Connie Brown, Jennifer Zimmerman, April Vicars, Michelle Ditmer, Jason Shankland, and Kole Ann, among others.

83.     Following execution of the Settlement Agreement, and for more than eighteen months, Perfectly Posh, through management, and in concert with Terry LaCore, Jenifer Grace, and Anna Brooks, refused to transfer to Dalton the "Ambitchous" Trademark that Dalton designed when she was an owner of Perfectly Posh; this was done for the purpose of hampering Dalton's ability to grow her post-resignation startup business.  Bad acts and delay tactics included attempts to manipulate Dalton into entering a licensing and use agreement for the Ambitchous mark versus actually assigning ownership as specified in the Separation Agreement, and forcing Dalton to obtain specialized trademark counsel at additional expense to her to ensure the mark was being fully assigned to Dalton.

84.     Perfectly Posh, through the directives and actions of Lohner, Terry LaCore and Jenifer Grace, and one or more of DOES 1-100, refused to pay Dalton amounts owed to her under the Separation Agreement for the purpose of placing her and her family in a precarious financial position and with the intent to hamper Dalton's ability to fund and grow her post-resignation startup business, causing financial damage to Dalton and Ambitchous.

85.     Perfectly Posh, through the directives and actions of Lohner, Terry LaCore, Anna Brooks, and Jenifer Grace, and one or more of DOES 1-100, interfered with, hindered, and ultimately prevented Dalton from successfully building her post-resignation startup business, causing financial damage to Dalton and Ambitchous.

86.     Perfectly Posh, through the directives and actions of Lohner, Terry LaCore, Anna Brooks and Jenifer Grace, and one or more of DOES 1-100, interfered with, hindered, and ultimately prevented Dalton from receiving the benefits owed her through the Separation Agreement, causing financial damage to Dalton and Ambitchous. This included leaving Dalton's name on expensive, unpaid tax bills and other obligations as late as fall of 2023, at which time she received a bill from the State of Vermont for unpaid taxes owed by Perfectly Posh totaling tens of thousands of dollars.

87.     The actions and inactions of Lohner and one or more of DOES 1-100 have intentionally damaged Dalton's reputation in the industry and have scared off existing and potential customers, clients, and employees of Dalton's post-resignation startup business, causing financial damage to Dalton and Ambitchous.

88.     The actions and inactions of Lohner, in concert with Terry LaCore, Anna Brooks and Jenifer Grace, and one or more of DOES 1-100, resulted in Dalton having to close her post-resignation startup business, causing financial damage to Dalton and Ambitchous.

89.     Lohner, individually and as an executive of Perfectly Posh, and in concert with one or more of Terry LaCore, Anna Brooks, Jenifer Grace and DOES 1-100, prevented Dalton from receiving the compensation owed to her by Perfectly Posh pursuant to the Separation Agreement, as well as pursuant to the January 2017 employment agreement between Perfectly Posh and Dalton, causing financial damage to Dalton.

90.     On information and belief, LaCore and Innov8tive have now reopened Perfectly Posh, through PP Holdings, dba Perfectly Posh, under former President Andrew McBride to further monetize the assets transferred out of Perfectly Posh and liquidate the product without having to compensate those to whom Perfectly Posh was or remains indebted, including Dalton.

The reopening is being done claiming the returning "founder" (McBride) is "re-launching" the same company, consequently doing further damage to the reputation of the Perfectly Posh brand, which was successfully built by Dalton and subsequently dismantled and rendered insolvent by Momentum, Terry LaCore, Anna Brooks, Jenifer Grace and one or more of DOES 1-100. The returning "founder" in his previous tenure with the "old" Perfectly Posh developed no products at Perfectly Posh and led no marketing efforts for the company. While at Perfectly Posh, McBride was only responsible for operations, finance, and technical performance of the website and other mechanical functions.

91.    The claims advanced herein are advanced in the alternative under Fed. R. Civ. P. 8 to the extent necessary.

## FIRST CAUSE OF ACTION
### (Fraudulent Transfer under Tex. Bus. & Com. Code §§ 24.001, *et seq.*)
### (Against all Defendants)

92.    Plaintiffs incorporate as if fully set forth herein all allegations set forth in Paragraphs 1 through 91 of this Complaint.

93.    On May 27, 2022, Perfectly Posh executed an agreement to sell all its assets to Innova8tive pursuant to the Asset Purchase Agreement.

94.    Defendant Innov8tive is a recipient in the chain of title of the Assets that were transferred to it by Perfectly Posh pursuant to the Asset Purchase Agreement.

95.    Defendant PP Holdings is a recipient in the chain of title of the Assets that were transferred to Innov8tive by Perfectly Posh pursuant to the Asset Purchase Agreement.

96.    Upon information and belief, the Assets transferred pursuant to the Asset Purchase Agreement constitute transfers between insiders.

97.    Upon information and belief, Perfectly Posh did not receive consideration

reasonably equivalent in value in exchange for the transactions occurring pursuant to the Asset Purchase Agreement.

98.    Upon information and belief, the transactions occurring pursuant to the Asset Purchase Agreement rendered Perfectly Posh unable to pay its obligations or otherwise rendered Perfectly Posh insolvent.

99.    Perfectly Posh, via the efforts of Lohner, Terry LaCore, Jenifer Grace, Anna Brooks, Innov8tive, LaCore and one or more of DOES 1-100, made the transfer of its assets with actual intent to hinder, delay or defraud or otherwise harm Dalton and other creditors, supported by the following:

a.    Under the Asset Purchase Agreement, Perfectly Posh agreed to sell substantially all its assets to Innov8tive.

b.    Innov8tive is majority owned and controlled by parent company LaCore, which also held a majority ownership stake in Perfectly Posh at the time the Asset Purchase Agreement was executed.

c.    Before the Asset Purchase Agreement was executed, Dalton filed her Answer and Counterclaim in Perfectly Posh's original action against her.

d.    Defendants Lohner, Terry LaCore, Jenifer Grace, Anna Brooks, Innov8tive, and LaCore were aware of the Counterclaim against Perfectly Posh when the Asset Purchase Agreement was executed.

e.    The transfer of assets under the Asset Purchase Agreement contemplated the transfer of substantially all the assets owned or controlled by Perfectly Posh.

f.    Upon information and belief, under the Asset Purchase Agreement, Perfectly Posh did not receive consideration of reasonably equivalent value for

transferring all its assets to Innov8tive.

g.     Following execution of the Asset Purchase Agreement, Innov8tive shut down Perfectly Posh product lines whose revenue was intended to finance payments to Perfectly Posh under the Asset Purchase Agreement.

h.     Perfectly Posh was intentionally forced by Terry LaCore, Jenifer Grace, Anna Brooks and LaCore and Perfectly Posh to administratively expire as an entity according to the Utah Division of Corporations.

i.     Perfectly Posh had negative EBITDA of $647,788 for Quarter 1 of 2022 and negative EBITDA of $2,051,945 for Fiscal Year 2021.

j.     As of March 31, 2022, Perfectly Posh was unable to pay critical vendors and was, in essence, insolvent, largely due to the actions of Lohner, Innov8tive, LaCore and one or more of Terry LaCore, Jenifer Grace, Anna Brooks and DOES 1-100.

k.     The assets transferred from Perfectly Posh to Innov8tive, pursuant to the Asset Purchase Agreement, were subsequently transferred to PP Holdings and are now being marketed and sold by PP Holdings, dba Perfectly Posh TX.

100.   On information and belief, Lohner, and one or more of Terry LaCore, Jenifer Grace, Anna Brooks and DOES 1-100, as corporate agents, conspired with or aided and abetted Perfectly Posh, Innov8tive, PP Holdings and LaCore to harm both Dalton and other creditors.

101.   Given the foregoing, Dalton, under Tex. Bus. & Com. Code §§ 24.005(a)(1) and (2) and 24.006(a), is entitled to:

a.     Pursuant to Tex. Bus. & Com. Code § 24.008(a)(1), an order from this Court avoiding the Asset Purchase Agreement;

b.     Pursuant to Tex. Bus. & Com. Code § 24.008(a)(2), an attachment against

the assets transferred pursuant to the Asset Purchase Agreement;

> c.    Pursuant to Tex. Bus. & Com. Code § 24.008(a)(3)(A), an injunction, enjoining further disposition by Defendants of the assets transferred pursuant to the Asset Purchase Agreement;

> d.    Pursuant to Tex. Bus. & Com. Code § 24.008(a)(3)(B), appointment of a receiver to take control of the assets transferred pursuant to the Asset Purchase Agreement; and

> e.    Pursuant to Tex. Bus. & Com. Code § 24.008(b), a levy of execution of the assets transferred pursuant to the Asset Purchase Agreement to satisfy the judgment obtained by Dalton in Case No. 210903062.

102.    Given the foregoing, Defendants, jointly and severally, are liable for all damages occurring to Perfectly Posh, such damages being sufficient to place Perfectly Posh in the same financial condition it held prior to execution of the Asset Purchase Agreement.

103.    Given the foregoing, Defendants, jointly and severally, are liable for all damages occurring to Perfectly Posh, such damages including the judgment obtained by Dalton in Case No. 210903062.

**SECOND CAUSE OF ACTION**
**(Declaratory Judgment – Alter Ego Liability)**
**(Against LaCore, Terry LaCore, Jenifer Grace and Anna Brooks)**

104.    Plaintiffs incorporate as if fully set forth herein all allegations set forth in Paragraphs 1 through 103 of this Complaint.

105.    LaCore and Terry LaCore, together with Jenifer Grace and Anna Brooks, exert extensive control and influence over Perfectly Posh, Innov8tive and PP Holdings.

106.    LaCore and Terry LaCore, together with Jenifer Grace and Anna Brooks, have

such a unity of interest with Perfectly Posh, Innov8tive and PP Holdings that there is no separation between these defendants and Perfectly Posh.

107.    LaCore and Terry LaCore, together with Jenifer Grace and Anna Brooks, decide, direct, approve and control all decisions for Perfectly Posh, Innov8tive and PP Holdings as to which attorneys, consultants, and professionals will be hired, used, or relied upon by Perfectly Posh, Innov8tive and PP Holdings.

108.    LaCore and Terry LaCore, together with Jenifer Grace and Anna Brooks, decide, direct, approve and control all decisions for Perfectly Posh, Innov8tive and PP Holdings as to which bills will or will not be paid on behalf of Perfectly Posh, Innov8tive and PP Holdings.

109.    LaCore and Terry LaCore, together with Jenifer Grace and Anna Brooks, decide, direct, approve and control all decisions for Perfectly Posh, Innov8tive and PP Holdings pertaining to financing, agreements, loans, pledges of collateral and other issues relating to debts and obligations of Perfectly Posh, Innov8tive and PP Holdings.

110.    LaCore and Terry LaCore, together with Jenifer Grace and Anna Brooks, reduced Perfectly Posh to a shell, which was rendered insolvent and has no ability to pay its creditors, including Dalton.

111.    Adherence to the fiction of separate entity status between and among LaCore and Terry LaCore, together with Jenifer Grace and Anna Brooks, on the one hand, and Perfectly Posh, Innov8tive and PP Holdings on the other, would sanction fraud or promote injustice.

112.    LaCore and Terry LaCore, together with Jenifer Grace and Anna Brooks, exercise such dominion and control over Perfectly Posh, Innov8tive and PP Holdings that the corporations cease to exist separate from LaCore and Terry LaCore, together with Jenifer Grace and Anna Brooks, such that piercing the veil of these defendants or reverse piercing the veil is

20

warranted such that these defendants should be liable for the debts and obligations of Perfectly Posh, Innov8tive and PP Holdings, and, in particular, for the judgment entered against Perfectly Posh in favor of Dalton, as well as any subsequent judgment entered against either Innov8tive or PP Holdings or both.

## THIRD CAUSE OF ACTION
### (Declaratory Judgment – Successor Liability)
### (Against Innov8tive and PP Holdings)

113.    Plaintiffs incorporate as if fully set forth herein all allegations set forth in Paragraphs 1 through 112 of this Complaint.

114.    Perfectly Posh transferred, pursuant to the Asset Purchase Agreement, its Assets to Innov8tive.

115.    At the time of execution of the Asset Purchase Agreement, Innov8tive and individuals in control of Innov8tive, including Terry LaCore, Jenifer Grace and Anna Brooks, were aware of debts owed by Perfectly Posh to creditors, including Dalton.

116.    At the time of execution of the Asset Purchase Agreement, Innov8tive and individuals in control of Innov8tive, including Terry LaCore, Jenifer Grace and Anna Brooks, were aware of the Counterclaim filed by Dalton against Perfectly Posh.

117.    At the time of execution of the Asset Purchase Agreement, Innov8tive and individuals in control of Innov8tive, including Terry LaCore, Jenifer Grace and Anna Brooks, were aware that Perfectly Posh was or would soon be insolvent and unable to pay its debts as the debts came due.

118.    Upon information and belief, following transfer of the Assets, Innov8tive, at least for a period of time, engaged in disposition of the Assets using the same business model previously employed by Perfectly Posh.

119.    Upon information and belief, the assets transferred to Innov8tive were

subsequently transferred to PP Holdings.

120.    Upon information and belief, PP Holdings is currently engaged in disposition of the Assets using the same business model previously employed by Perfectly Posh.

121.    Upon information and belief, both Innov8tive and PP Holdings have the ability to provide adequate relief to Dalton and the overall equities support the imposition of successor liability on Innov8tive and PP Holdings.

## FOURTH CAUSE OF ACTION
### (Intentional Interference with Economic Relations)
### (Against Lohner, Terry LaCore, Anna Brooks, and Jenifer Grace, and DOES 1-100)

122.    Plaintiffs incorporate as if fully set forth herein all allegations set forth in Paragraphs 1 through 121 of this Complaint.

123.    Lohner, a Perfectly Posh executive and board member, in concert with Terry LaCore, Anna Brooks, and Jenifer Grace, one or more of DOES 1-100, tortiously interfered with Dalton's economic relations.

124.    Lohner threatened Dalton, both before and after she had resigned from Perfectly Posh, that he would make it difficult for her to maintain a favorable reputation in the industry; he also told Dalton he would make it difficult for her to engage in any work of her own in the direct sales industry.

125.    Lohner followed through with those threats in his discussions with Perfectly Posh's board.  His distasteful communications with Perfectly Posh board members wrongfully soured their views of Dalton.  Lohner conveyed that same sentiment to Terry LaCore, Anna Brooks, and Jenifer Grace which demolished an opportunity Dalton had previously fostered with LaCore.  On information and belief, Lohner, through a mutual associate, ran off a potential investor of Dalton's in Arizona in July 2023 at a loss of $500,000 to $2 million, as well as doing reputational damage to Dalton via conversations about Dalton with shareholders and owners of

Perfectly Posh prior to and post Dalton's disassociation with Perfectly Posh and Momentum.

126.    All these efforts were made with the malicious intent of hampering Dalton's post-resignation startup businesses and her economic relations.

127.    Dalton's economic relations have been damaged from the interference by Lohner, Terry LaCore, Anna Brooks, Jenifer Grace, and one or more of DOES 1-100, entitling Dalton to judgment against them, in amounts to be shown at trial, such judgment being for compensatory damages not less than $1,250,000.

128.    The conduct of Lohner, Terry LaCore, Anna Brooks, and Jenifer Grace, and one or more of DOES 1-100 was malicious and intentional or manifesting of a knowing and reckless indifference toward Dalton, entitling Dalton to an award of punitive damages in an amount to be shown at trial.

### FIFTH CAUSE OF ACTION
### (Civil Conspiracy)
### (Against all Defendants)

129.    Plaintiffs incorporate as if fully set forth herein all allegations set forth in Paragraphs 1 through 128 of this Complaint.

130.    Defendants constitute two or more legal persons.

131.    Defendants intended to accomplish an object, namely, to deprive Plaintiffs of assets or monies that rightfully belong to them.

132.    Based on the conduct described herein, two or more of these Defendants had a meeting of the minds on the object or course of action to be accomplished.

133.    Based on the conduct described herein, two or more of these Defendants engaged in one or more unlawful overt acts.

134.    As a result of these Defendants' conduct, Plaintiffs have suffered damages in an amount to be proven at trial.

135.     Defendants' conduct was and is willful, wanton, malicious, and oppressive, entitling Plaintiffs to punitive damages in an amount to be determined by the trier of fact in excess of compensatory damages.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

### On the First Claim for Relief

1.     An order avoiding or rescinding the Asset Purchase Agreement;

2.     An order enjoining further disposition by Innov8tive and PP Holdings, dba Perfectly Posh TX, of the assets transferred pursuant to the Asset Purchase Agreement;

3.     An order attaching the assets transferred pursuant to the Asset Purchase Agreement;

4.     An order appointing a receiver to take control of the assets transferred pursuant to the Asset Purchase Agreement.

5.     An order of execution of the assets transferred pursuant to the Asset Purchase Agreement to satisfy the judgment obtained by Dalton in Case No. 210903062.

6.     An order finding all Defendants liable, jointly and severally, for all damages occurring to Perfectly Posh pursuant to the Asset Purchase Agreement, such damages including the amount of the judgment obtained by Dalton in Case No. 210903062.

### On the Second Claim for Relief

7.     A declaration in Plaintiffs' favor that each of LaCore, Terry LaCore, Jenifer Grace and Anna Brooks acted as the alter ego of one or both of Perfectly Posh and Innov8tive.

8.      A judgment in Plaintiffs' favor that each of LaCore, Terry LaCore, Jenifer Grace and Anna Brooks should be liable, jointly and severally, for any obligations of Perfectly Posh or Innov8tive, including any judgment entered against Innov8tive or the other defendants as a result of the claims made herein, including punitive damages, pre-judgment interest, costs, fees and all other relief the Court deems just under the circumstances against Defendants.

### On the Third Claim for Relief

9.      A declaration that Innov8tive and PP Holdings are liable as successors to Perfectly Posh for all obligations of Perfectly Posh, including the judgment obtained by Dalton in Case No. 210903062.

### On the Fourth Claim for Relief

10.     Compensatory damages against Lohner, Terry LaCore and Jenifer Grace, and one or more of DOES 1-100, in an amount in excess of $1,250,0000, to be determined at trial; and

11.     Punitive damages against Lohner, Terry LaCore and Jenifer Grace in an amount to be determined at trial.

### On the Fifth Claim for Relief

12.     Compensatory damages against all Defendants, and one or more of DOES 1-100, in an amount in excess of $1,250,000, to be determined at trial; and

13.     Punitive damages against all Defendants, and one or more of DOES 1-100, in an amount to be determined at trial.

### Additional Relief Against All Defendants

14.     An award of prejudgment and post-judgment interest against all Defendants as may be allowed by law;

15.     Punitive damages against all Defendants in an amount to be determined at trial;

16.    An award of attorney fees and costs against all Defendants as may be allowed by law; and

17.    Such other relief as the Court deems just and equitable under the circumstances.

DATED May 31, 2024.

CHRISTIANSEN LAW, PLLC


By:  /s/ Stephen K. Christiansen
     Stephen K. Christiansen
     Utah Bar No. 6512
     steve@skclawfirm.com
     James R. Farmer
     Utah Bar No. 8592
     james@skclawfirm.com
     311 S. State Street, Suite 250
     Salt Lake City, UT 84111
     Telephone: 801.716.7016
     Facsimile: 801.716.7017
     *Attorneys for Plaintiffs*