IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANN DALTON, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-00687-N |
| | § | |
| INNOV8TIVE NUTRITION, INC., | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses defendants PP Holdings Co., Inc. ("PP Holdings"), Innov8tive

Nutrition, Inc. ("Innov8tive"), LaCore Enterprises, LLC ("LCE"), Terry LaCore

("LaCore"), Jenifer Grace, and Anna Brooks's motion to dismiss [26] and motion to stay

[34]. It also addresses defendant Mike Lohner's motion to dismiss [30]. For the reasons

below, the Court grants in part and denies in part the motions to dismiss and denies the

motion to stay as moot.

### I. ORIGINS OF THE DISPUTE

This is a fraudulent transfer case. Plaintiffs Ann Dalton and Ambitchious LLC

(collectively, "Dalton") seek to recover on a default judgment owed to Dalton by a now-

defunct company: Perfectly Posh. Dalton asserts claims for fraudulent transfer under the

Texas Uniform Fraudulent Transfer Act ("TUFTA"), alter ego liability, successor liability,

"intentional interference with economic relations," and civil conspiracy. Pls.' Am. Compl.

¶¶ 92–135 [6].

MEMORANDUM OPINION AND ORDER – PAGE 1

In December 2019, Dalton resigned from her position as CEO of Perfectly Posh. *Id.* ¶¶ 14, 26.[1]  As part of her resignation, Dalton executed a Separation Agreement with Perfectly Posh that entitled her to receive certain future payments. *Id.* ¶¶ 27–28.  The following year, Perfectly Posh sued Dalton in Utah state court, alleging Dalton breached the Separation Agreement. *Id.* ¶ 29.  Dalton asserted multiple counterclaims, including breach of the Separation Agreement by Perfectly Posh. *Id.* ¶¶ 30–31.  Dalton and Perfectly Posh proceeded with the case and engaged in an ultimately unsuccessful mediation. *See id.* ¶¶ 34–35.  Shortly after the mediation, Perfectly Posh ceased shipping orders. *Id.* ¶ 35.  Then, Perfectly Posh sold all its inventory to another entity, Defendant Innov8tive, and became insolvent. *Id.* ¶¶ 45–51.

Defendant LCE was the majority owner of Perfectly Posh at the time Perfectly Posh sold its assets. *Id.* ¶ 99(b).  LCE is also the majority owner of Innov8tive, the second party to Perfectly Posh's asset sale. *See id.*  Defendant LaCore is the sole member of LCE. *Id.* ¶ 8.  Defendants Grace and Brooks were executives at LCE, and Grace was a shareholder of Innov8tive. *Id.* ¶¶ 61, 64.

Following the sale, Grace, a manager for Perfectly Posh, filed a statement of termination with the Utah Division of Corporations. *Id.* ¶ 54.  This caused Perfectly Posh to become an expired entity. *Id.* ¶ 55.  Subsequently, the Utah court entered a default judgment against Perfectly Posh on Dalton's counterclaims, awarding approximately $1.25 million in damages. *Id.* ¶¶ 40–41.  Then, Dalton alleges that Perfectly Posh's assets were

---

[1] For purposes of these motions, the Court assumes the truth of the allegations in the amended complaint.

MEMORANDUM OPINION AND ORDER – PAGE 2

transferred to another entity, PP Holdings, that is now marketing and selling them.  *Id.* ¶¶ 58–59.  LaCore is the sole director of PP Holdings.  *Id.* ¶ 7.

Through this series of events, Dalton alleges that the defendants engaged in a scheme to hide Perfectly Posh's assets and prevent Dalton from collecting her Separation Agreement payments and resulting default judgment.  *See id.* ¶¶ 93–99.  Dalton previously moved for a preliminary injunction and writ of attachment, which the Court denied.  Mem. Op. & Order, Dec. 5, 2024 [50].  Now, across two motions to dismiss, all defendants move to dismiss most of the claims in this case under Rule 12(b)(6), Rule 12(b)(7), and Rule 4(m).  *See* Defs.' Br. 2–3 [26-1]; Lohner Br. 2 [31].

## II.  LEGAL STANDARDS

### A.  *Rule 12(b)(6) Standard*

When deciding a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief.  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).  A viable complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To meet this "facial plausibility" standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).  But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  "Factual allegations

MEMORANDUM OPINION AND ORDER – PAGE 3

must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

In ruling on a Rule 12(b)(6) motion, a court generally limits its review to the face of the pleadings, accepting as true all well-pleaded facts and viewing them in the light most favorable to the plaintiff. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a court may also consider documents outside of the pleadings if they fall within certain limited categories. First, a "court is permitted . . . to rely on 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)). Second, a "written document that is attached to a complaint as an exhibit is considered part of the complaint and may be considered in a 12(b)(6) dismissal proceeding." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). Third, a "court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'" *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)). Finally, in "deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record." *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994); *see also, e.g., Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (stating, in upholding district court's dismissal pursuant to Rule 12(b)(6), that the "district court took appropriate judicial notice

MEMORANDUM OPINION AND ORDER – PAGE 4

of publicly-available documents and transcripts produced by the FDA, which were matters of public record directly relevant to the issue at hand").

### B. Rule 12(b)(7) Standard

Rule 12(b)(7) allows for dismissal for failure to join a required party under Rule 19. FED. R. CIV. P. 12(b)(7). However, a motion to dismiss for failure to join a required party "will not be granted because of a vague possibility that persons who are not parties may have an interest in the action." *Indian Harbor Ins. Co. v. KB Lone Star, Inc.*, 2012 WL 1038658, at *1 (S.D. Tex. 2012) (citing 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1359 (2d ed. 1990)). In deciding a Rule 12(b)(7) motion, the Court is not limited to the pleadings, and may consider "allegations of the complaint and the affidavits and other proofs adduced in contradiction or support thereof." *Estes v. Shell Oil Co.*, 234 F.2d 847, 849 (5th Cir. 1956).

Dismissal for failure to join a necessary party under Rule 19 involves a two-part inquiry. *Hood ex rel. Miss. v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009). First, the court must determine whether the party must be added under Rule 19(a). *Id.* Rule 19(a) requires joinder of a party that will not deprive the court of subject matter jurisdiction if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or

MEMORANDUM OPINION AND ORDER – PAGE 5

> (ii) leave an existing party subject to a substantial risk
> of incurring double, multiple, or otherwise inconsistent
> obligations because of the interest.

FED. R. CIV. P. 19(a)(1). If the party is indeed required, and if joinder would destroy the

court's subject matter jurisdiction, the court moves to the second step of the inquiry. In

this phase, the court decides "whether litigation can be properly pursued without the absent

party." *Hood*, 570 F.3d at 629. In doing so, the court considers the following factors set

out in Rule 19(b):

> (1) the extent to which a judgment rendered in the person's
> absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or
> avoided by:
> > (A) protective provisions in the judgment;
> > (B) shaping the relief; or
> > (C) other measures;
> (3) whether a judgment rendered in the person's absence would
> be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the
> action were dismissed for nonjoinder.

FED. R. CIV. P. 19(b).

### C. Rule 4(m) Standard

Rule 4(m) permits the court to dismiss a case without prejudice if the plaintiff fails

to serve a defendant within 90 days of filing the complaint. FED. R. CIV. P. 4(m). However,

if the plaintiff can establish good cause for failing to serve the defendant, the Court must

allow additional time for service. *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996). To

establish good cause, the plaintiff has the burden of demonstrating "at least as much as

would be required to show excusable neglect." *Winters v. Teledyne Movible Offshore, Inc.*,

776 F.2d 1304, 1306 (5th Cir. 1985). It is irrelevant if the defendant later finds out about

MEMORANDUM OPINION AND ORDER – PAGE 6

the suit or is actually served so long as there was not good cause for the failure to serve within the 90-day period. *Id.* at 1305–06. However, even if good cause is lacking, the court has discretionary power to extend the time for service. *Thompson*, 91 F.3d at 21.

### III. THE COURT GRANTS IN PART AND DENIES IN PART THE MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

Dalton asserts five causes of action: (1) fraudulent transfer under TUFTA against all defendants; (2) declaratory judgment of alter ego liability against LCE, LaCore, Grace, and Brooks; (3) declaratory judgment of successor liability against Innov8tive and PP Holdings; (4) "intentional interference with economic relations" against Lohner, LaCore, Brooks, Grace, and Does 1–100; and (5) civil conspiracy against all defendants. Pls.' Am. Compl. ¶¶ 92–135. In response to the motions to dismiss, Dalton abandoned her successor liability claim and her claim for fraudulent transfer against Lohner. Pls.' Resp. Br. 16 [36]; Pls.' Resp. Br. Lohner 5–6 [39]. Accordingly, the Court grants the motion to dismiss the successor liability claim against Innov8tive and PP Holdings and the fraudulent transfer claim against Lohner.

Then, because Dalton fails to plead sufficient facts to support her claims for fraudulent transfer against Brooks; alter ego liability against Brooks; intentional interference with prospective business relations; and civil conspiracy against PP Holdings, Innov8tive, and LCE, the Court grants the motions to dismiss those claims. The Court otherwise denies the motions to dismiss.

### A. The Court Grants the Motions to Dismiss the Fraudulent Transfer Claim Against Brooks

Dalton first asserts a claim for fraudulent transfer against all defendants. Pls.' Am. Compl. ¶¶ 92–103. Innov8tive and PP Holdings do not move to dismiss the fraudulent transfer claims against them. LCE, LaCore, Grace, and Brooks move to dismiss the fraudulent transfer claims against them based on the arguments that they are neither debtors nor transferees under TUFTA, and that they did not receive a benefit from the alleged fraudulent transfer. Defs.' Br. 4–8. Upon reviewing the operative complaint, the Court concludes Dalton has sufficiently alleged that LCE, LaCore, and Grace received a benefit from the transaction but has not done so with respect to Brooks.

TUFTA operates to void certain fraudulent "transfers," which the statute defines as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." TEX. BUS. & COM. CODE § 24.002(12). TUFTA considers several types of transfers to be fraudulent. Under section 24.005(a)(1), a transfer is fraudulent where "the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." TEX. BUS. & COM. CODE § 24.005(a)(1). Similarly, under section 24.005(a)(2), a transfer is fraudulent where the debtor did not receive reasonably equivalent value and the debtor:

> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

MEMORANDUM OPINION AND ORDER – PAGE 8

*Id.* § 24.005(a)(2).  A transfer is also fraudulent where the debtor did not receive reasonably equivalent value and "the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."  *Id.* § 24.006(a).  Finally, a transfer is fraudulent "if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent." *Id.* § 24.006(b).

Under TUFTA, a creditor may obtain entry of a judgment against the first transferee of the asset, any subsequent transferee of the asset other than a good faith purchaser, or "the person for whose benefit the transfer was made."  *Id.* § 24.009(b).  The "person for whose benefit the transfer was made" can include a variety of transfer beneficiaries including the debtor, *Trigeant Holdings, Ltd. v. Jones*, 183 S.W.3d 717, 726 (Tex. App. — Houston [1st Dist.] 2005, pet. denied), majority shareholders of the debtor and transferee, *see Esse v. Empire Energy III, Ltd.*, 333 S.W.3d 166, 180–81 (Tex. App. — Houston [1st Dist.] 2010, pet. denied), and the owner of an entity that increased in value as a result of the transfer, *Citizens Nat'l Bank of Tex. v. NXS Constr., Inc.*, 387 S.W.3d 74, 85 (Tex. App. — Houston [14th Dist.] 2012, no pet.).  Generally, these cases found the defendant was a person for whose benefit the transfer was made where the defendant "assented to and benefitted from" the transfer or "was actually involved in the transfer."  *Exec. Workspace-ABC-Preston Rd., LLC v. Rsrv. Cap.-Preston Grove SPE, LLC*, 2024 WL 5087120, at *6 (Tex. App. — Dallas 2024, no pet. h.) (mem. op.) (quoting *Janvey v. Libyan Inv. Auth.*, 840 F.3d 248, 266 (5th Cir. 2016) (per curiam)).

MEMORANDUM OPINION AND ORDER – PAGE 9

Here, Dalton sufficiently alleges that LCE and LaCore were persons for whose benefit the transfer was made. First, Dalton's allegation that LCE is the majority owner of both Perfectly Posh, the debtor, and Innov8tive, the first transferee, are sufficient to establish that LCE is a beneficiary of the transfer. *See* Pls.' Am. Compl. ¶ 99(b). At the time of the transfer, Dalton's counterclaim against Perfectly Posh for breach of the separation agreement was pending. *See id.* ¶¶ 30, 41, 45. Dalton then alleges that LCE used its control over Perfectly Posh to effectuate the fraudulent transfer of all Perfectly Posh's assets to Innov8tive — an entity not subject to Dalton's claim for payment. *See id.* ¶¶ 45–56. In doing so, LCE effectively benefitted by avoiding the liabilities of Perfectly Posh while retaining its assets. In this way, LCE at least "assented to and directly benefitted from" the transfer. *See Esse*, 333 S.W.3d at 181. Accordingly, Dalton has stated a claim for fraudulent transfer against LCE. And the claim is equally valid against LaCore, as Dalton alleges he is the sole member of LCE, Pls.' Am. Compl. ¶ 8, and he therefore receives identical benefits to LCE. Thus, the Court denies the motion to dismiss the fraudulent transfer claim against LCE and LaCore.

Dalton has also sufficiently alleged that Grace is a person for whose benefit the transfer was made. Dalton asserts that Grace "owned or otherwise controlled a large shareholder stake in Innov8tive," was an executive at LCE, and acted as a manager for Perfectly Posh. Pls.' Am. Compl. ¶¶ 54, 61, 64. As a large shareholder in Innov8tive, Grace would directly benefit from a transaction where Innov8tive acquires Perfectly Posh's valuable assets free of its liabilities, and without having to pay reasonably equivalent value. *See* Pls.' Am. Compl. ¶¶ 47–50 (describing the purported consideration for the asset

MEMORANDUM OPINION AND ORDER – PAGE 10

transfer and alleging it is not of reasonably equivalent value). And Dalton further alleges that Grace and was directly involved in the fraudulent transfer by way of her involvement in "all decisions concerning control over [Perfectly Posh's] assets, bill paying, human resources, hiring and firing, and all key and even daily routine decisions." Pls.' Am. Compl. ¶ 61. Accordingly, Dalton has sufficiently alleged that Grace was a person for whose benefit the transfer was made, and the Court therefore denies the motion to dismiss the fraudulent transfer claim against Grace.

However, Dalton makes no individualized assertions about Brooks sufficient to state a plausible claim against her. Many of the allegations about Grace's conduct with respect to Innov8tive, LCE, and Perfectly Posh also name Brooks. *See, e.g.*, Pls.' Am. Compl. ¶ 61 (stating that LaCore, Grace, and Brooks were executives at LCE and exercised full control over Perfectly Posh). However, Dalton makes no assertions regarding any shareholder or ownership status of Brooks that could establish she received a benefit from the fraudulent transfer. Per the allegations in the complaint, Brooks was involved in the conduct surrounding the transfer, but unlike Grace, there is no allegation that Brooks had any financial stake in the relevant entities. As such, Dalton has not sufficiently alleged that she was a person for whose benefit the transfer was made, and the Court accordingly grants the motion to dismiss the fraudulent transfer claim against her.

### B. The Court Grants the Motion to Dismiss the Alter Ego Claim Against Brooks

Next, Dalton asserts a claim for declaratory judgment of alter ego liability against LCE, LaCore, Grace, and Brooks. Pls.' Am. Compl. ¶¶ 104–12. All four of these defendants move to dismiss Dalton's claim on the basis that Dalton has not alleged they

MEMORANDUM OPINION AND ORDER – PAGE 11

received a direct benefit from the use of the corporate fiction to effectuate actual fraud. Defs.' Br. 9–10.    Reviewing the complaint, the Court concludes that Dalton has successfully stated an alter ego claim against LCE, LaCore, and Grace, but not Brooks.

Texas law provides that a plaintiff can pierce the corporate veil under a theory of alter ego in limited circumstances. *Plan B Holdings, LLC v. RSLLP*, 681 S.W.3d 443, 458 (Tex. App. — Austin 2023, no pet.).    Generally, the liability of shareholders and corporate affiliates for contractual obligations of a corporation is limited by statute. *See* TEX. BUS. ORGS. CODE § 21.223(a)(2).    This statutory provision limits alter ego liability where (1) the plaintiff is a corporation or LLC, or its obligee; (2) the defendant is a shareholder or affiliate of the shareholder or corporation; and (3) the plaintiff seeks to recover for a contractual obligation of the entity or a matter relating to or arising from that obligation. *Keyes v. Weller*, 692 S.W.3d 274, 281 (Tex. 2024).

Here, Dalton asserts she is the obligee of Perfectly Posh, an LLC, by way of the Separation Agreement and subsequent default judgment.    She also alleges that LCE was the majority shareholder of Perfectly Posh, LaCore was the sole member of LCE, and Grace and Brooks were executives at LCE and exercised control over Perfectly Posh.[2] Pls.' Am. Compl. ¶¶ 8, 61, 99(b). And she asserts claims for fraudulent transfer, allegedly perpetrated to avoid Perfectly Posh's obligations to Dalton under the Separation

---

[2] These alleged facts are sufficient to conclude that LaCore, Grace, and Brooks were affiliates of LCE as required for the statute to apply.    "Affiliate" is defined as "a person who controls, is controlled by, or is under common control with another person." TEX. BUS. ORGS. CODE § 1.002(1).

MEMORANDUM OPINION AND ORDER – PAGE 12

Agreement. *See id.* ¶¶ 84, 99. Thus, under the facts as alleged here, section 21.223(a)(2) applies to limit the alter ego liability of LCE, LaCore, Grace, and Brooks.

Once the Court determines that this statute applies, the Court must then consider the "statutory exception that allows individual liability to be imposed 'when the corporate form has been used as part of a basically unfair device to achieve an inequitable result.'" *Plan B Holdings*, 681 S.W.3d at 458 (quoting *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 451 (Tex. 2008)). The statutory exception reads:

> Subsection (a)(2) does not prevent or limit the liability of a holder . . . or affiliate if the obligee demonstrates that the holder . . . or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder . . . or affiliate.

Tex. Bus. Orgs. Code § 21.223(b). In this context, "actual fraud is not equivalent to the tort of fraud." *Latham v. Burgher*, 320 S.W.3d 602, 607 (Tex. App. — Dallas 2010, no pet.). Rather, actual fraud usually involves "dishonesty of purpose or intent to deceive." *Id.* (quoting *Castleberry v. Branscum*, 721 S.W.2d 270, 273 (Tex. 1986), *superseded by statute in part by* Tex. Bus. Orgs. Code § 21.223). The term "primarily for the direct personal benefit of the holder" is not defined in the statute, but courts generally find this element met when the "evidence showed that funds derived from the corporation's allegedly fraudulent conduct were pocketed or diverted to the individual defendant." *Hong v. Havey*, 551 S.W.3d 875, 885–86 (Tex. App. — Houston [14th Dist.] 2018, no pet.).

Then, after showing that the statutory exception applies, the plaintiff must establish the requirements for alter ego liability itself. In Texas, a finding of alter ego liability is

based on factors including "the degree to which . . . corporate and individual property have been kept separately, the amount of financial interest, ownership, and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Castleberry*, 721 S.W.2d at 272.[3]  And when an entity is the defendant, courts also consider:

> [1] whether the entities shared a common business name, common offices, common employees, or centralized accounting;
> [2] whether one entity paid the wages of the other entity's employees;
> [3] whether one entity's employees rendered services on behalf of the other entity;
> [4] whether one entity made undocumented transfers of funds to the other entity; and
> [5] whether the allocation of profits and losses between the entities is unclear.

*Tryco Enters., Inc. v. Robinson*, 390 S.W.3d 497, 509 (Tex. App. — Houston [1st Dist.] 2012, pet. dism'd).

Here, Dalton sufficiently pleads that LCE and LaCore used Perfectly Posh as an alter ego to perpetrate an actual fraud on her for their direct person benefit.  Dalton alleges that after she resigned from Perfectly Posh, she and Perfectly Posh entered into a Separation Agreement that entitled her to some future payments.  Pls.' Am. Compl. ¶¶ 26–28. Perfectly Posh later sued Dalton for breach of the Separation Agreement and Dalton counterclaimed for the same.  *Id.* ¶¶ 29–31.  As this litigation was ongoing, Dalton alleges

---

[3] *Castleberry* also lists failure to observe corporate formalities as a factor to consider for alter ego liability.  *See* 721 S.W.2d at 272.  However, shareholder liability on the basis of failure to observe corporate formalities is now prohibited by statute in Texas.  *See* TEX. BUS. ORGS. CODE § 21.223(a)(3).

LCE and LaCore caused Perfectly Posh to sell all its assets to Innov8tive — another subsidiary of LCE — for less than reasonably equivalent value. *Id.* ¶¶ 42–49. Specifically, the purported consideration for the assets included (1) forgiveness of a $700,000 promissory note Perfectly Posh and LCE entered into seventeen days before the asset sale; (2) payment of an $835,161 debt to a third party; and (3) future payment of $2.5 million in "sales override interest," presumably to come from Innov8tive's sale of the assets. *Id.* ¶¶ 47, 50. Dalton asserts that this sale caused Perfectly Posh to become insolvent. *Id.* ¶ 52.

Then, Innov8tive proceeded to stop selling the product lines that were meant to finance the sales override interest and sold the assets to another entity — PP Holdings (of which LaCore is the sole director) — that is now selling them. *Id.* ¶¶ 7, 50, 58–59. Dalton alleges these transactions were all orchestrated by LaCore, Grace, and Brooks and performed with actual intent to defraud Dalton by rendering Perfectly Posh insolvent. *Id.* ¶ 56.

These facts are sufficient allegations to state a claim for alter ego liability against LCE, LaCore, and Grace. LCE, as the majority shareholder of both Perfectly Posh and Innov8tive, would directly benefit from a transaction where it separates Perfectly Posh's assets from its liabilities and avoids paying those liabilities as a result. This conclusion is further supported by the allegations that Innov8tive then was able to avoid its obligations to Perfectly Posh by not selling the assets and transferring them to another entity wholly controlled by LaCore — PP Holdings. LaCore, as the sole member of LCE and sole director of PP Holdings, also receives the same direct financial benefits as LCE. Grace, as

MEMORANDUM OPINION AND ORDER – PAGE 15

a large shareholder in Innov8tive, Pls.' Am. Compl. ¶ 64, likewise receives a direct personal benefit when Innov8tive obtains Perfectly Posh's assets without the same liabilities.

And the facts as alleged are sufficient to plausibly infer that LaCore (and therefore LCE) and Grace acted with dishonesty of purpose. LCE's loan to Perfectly Posh just seventeen days before that loan was forgiven in consideration for the assets is one fact tending to show LCE's purpose was in obtaining Perfectly Posh's assets free of its liabilities to Dalton. And the subsequent shutdown of Innov8tive's sales that would have funded the sales override interest also tends to show that LCE and LaCore intended to have Perfectly Posh fall into insolvency and avoid its debts. Further, the alleged facts show sufficient financial interest and control between Perfectly Posh and LCE, LaCore, and Grace. And the fact that LaCore and Grace were both executives at LCE, LaCore was the sole director of PP Holdings, and Grace was a manager at Perfectly Posh shows how LCE and Perfectly Posh shared common employees. Accordingly, the Court holds that Dalton has stated a claim for alter ego liability against LCE, LaCore, and Grace.

However, Dalton's allegations are insufficient to state an alter ego claim against Brooks. As with the fraudulent transfer claim, Dalton does not allege Brooks had any ownership interest in any of the involved entities that would show she received a direct benefit from her conduct. And without a showing of direct personal benefit, the statutory exception allowing alter ego liability is not applicable. *See* TEX. BUS. ORGS. CODE § 21.223(b). Accordingly, the Court grants the motion to dismiss the alter ego claim against Brooks.

MEMORANDUM OPINION AND ORDER – PAGE 16

### C. The Court Grants in Part and Denies in Part the
### Motions to Dismiss the Intentional Interference Claim

Next, Dalton asserts a claim for "Intentional Interference with Economic Relations" against Lohner, LaCore, Brooks, Grace, and Does 1–100. Pls.' Am. Compl. ¶¶ 122–28. As an initial matter, the Court notes that it is unclear from the claim's language whether Dalton is asserting a claim for intentional interference with existing contract or tortious interference with prospective business relations or both. However, as the Court must construe the complaint in the light most favorable to Dalton, the Court will consider the sufficiency of her pleadings under both theories.

First, the Court holds Dalton has adequately stated a claim for intentional interference with existing contract. The elements of this claim are: (1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) that proximately caused (4) actual damage or loss to the plaintiff. *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017). To succeed, the plaintiff must prove an actual breach of an obligatory provision of the contract. *El Paso Healthcare Sys., Ltd. v. Murphy*, 518 S.W.3d 412, 421–22 (Tex. 2017). For an act of interference to be intentional, the defendant must have intent to interfere, not just an intent to perform the act. *Sw. Bell Tel. Co. v. John Carlo Tex., Inc.*, 843 S.W.2d 470, 472 (Tex. 1992).

Here, Dalton has sufficiently alleged that Lohner, LaCore, Brooks, and Grace intentionally interfered with the Separation Agreement. First, her allegations identify the Separation Agreement as a contract between her and Perfectly Posh. *See* Pls.' Am. Compl. ¶¶ 27–28. She then alleges that, through the scheme to transfer Perfectly Posh's assets to

MEMORANDUM OPINION AND ORDER – PAGE 17

Innov8tive and PP Holdings, LaCore, Brooks, and Grace intentionally interfered with this contract by preventing Perfectly Posh from meeting its payment obligations. *See id.* ¶ 47–59 (describing the transactions resulting in Perfectly Posh's insolvency); *id.* ¶ 89 ("Lohner . . . in concert with one or more of Terry LaCore, Anna Brooks, Jenifer Grace, and DOES 1–100 prevented Dalton from receiving the compensation owed to her by Perfectly Posh pursuant to the Separation Agreement."); *id.* ¶ 28 ("[LCE] and Lohner unilaterally changed or failed to abide by the terms of the Separation Agreement"); *id.* ¶ 61 ("all decisions concerning control over the company's assets . . . were made by [LCE] executives including Terry LaCore, Jenifer Grace, and Anna Brooks"). And she further alleges this proximately caused her approximately $1.25 million in damages, as evidenced by the default judgment Dalton obtained in the Utah state court litigation. *Id.* ¶ 41. Accordingly, the Court holds that Dalton has stated a claim for intentional interference with existing contract against Lohner, LaCore, Brooks, and Grace and therefore denies the motions to dismiss this claim.

However, the Court holds Dalton has failed to state a claim for tortious interference with prospective business relations. The elements this claim are: (1) a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; and (4) the interference proximately caused the plaintiff actual damage or loss. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).

Here, Dalton fails to allege sufficient plausible facts in support of this claim. First, she fails to plead facts indicating that any defendant's actions were independently tortious or unlawful. She alleges that Lohner "harassed Dalton via defamatory and disparaging statements," Pls.' Am. Compl. ¶ 79, and that he "conveyed that same sentiment to Terry LaCore . . . which demolished an opportunity Dalton had previously fostered with LaCore." Pls.' Am. Compl. ¶ 125. However, as to the tortious nature of these statements, Dalton's allegations are conclusory. She fails to assert any facts how or why these "defamatory" statements are defamatory. Indeed, she pleads very little about the content of the statements.

Second, she fails to plead facts that would show there is a reasonable probability that she would have entered into a business relationship with a third party. For her allegation that Lohner "ran off a potential investor of Dalton's," *id.*, Dalton fails to identify this potential investor and fails to give any supporting facts from which the Court could infer there was a reasonable probability this investor would have entered into a business relationship with Dalton. And as for the opportunity with LaCore, it is not clear that there was a reasonable probability he would enter into a relationship with Dalton given her allegations that he acted with actual intent to defraud her out of her Separation Agreement payments. *See id.* ¶ 99. Accordingly, the Court concludes Dalton has failed to state a claim for tortious interference with prospective business relations and grants the motions to dismiss this claim.

### D. The Court Grants the Motion to Dismiss the Civil Conspiracy Claim Against PP Holdings, Innov8tive, and LCE

Finally, Dalton asserts a claim for civil conspiracy against all defendants. Pls.' Am. Compl. ¶¶ 129–35. All defendants move to dismiss this claim, on the basis that (1) Texas law prohibits conspiracy liability for fraudulent transfer, and (2) assuming the Court dismisses Dalton's intentional interference claim, there is then no predicate tort for conspiracy. Defs.' Br. 16–17; Lohner's Br. 8–9. Upon reviewing the complaint, the Court concludes that Dalton has stated a claim for conspiracy against Lohner, LaCore, Grace, and Brooks but not against PP Holdings, Innov8tive, or LCE.

Under Texas law, civil conspiracy requires a plaintiff to show "(1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017). Additionally, civil conspiracy "is a derivative tort that depends on participation in some underlying tort." *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 138 (Tex. 2019) (internal quotation marks omitted). As such, a civil conspiracy claim "cannot stand unless the claim for the underlying tort stands." *Hart v. State Farm Lloyds*, 713 F. Supp. 3d 282, 290 (N.D. Tex. 2024).

However, under Texas law, "a general creditor does not have a cause of action for civil conspiracy when a debtor's property is conveyed to others to evade payment." *Mack v. Newton*, 737 F.2d 1343, 1356 (5th Cir. 1984) (citing *Estate of Stonecipher v. Estate of Butts*, 591 S.W.2d 806, 808 (Tex. 1979)). In *Estate of Stonecipher*, "the Supreme Court of Texas held that 'a judgment creditor, with a lien on the property made the basis of a

MEMORANDUM OPINION AND ORDER – PAGE 20

cause of action for conspiracy to prevent the collection of such lien, may recover such damages as result from the conspiracy,' but that as to property as to which a plaintiff is 'no more than a general creditor,' the plaintiff 'does not have a cause of action for conspiracy to prevent the collection of a judgment lien.'" *Clapper v. Am. Realty Inv., Inc.*, 2015 WL 3504856, at *4 (N.D. Tex. 2015) (quoting *Estate of Stonecipher*, 591 S.W.2d at 808).

Here, Dalton does not allege that she has a lien on any of Perfectly Posh's assets. She does allege that she is a judgment creditor, Pls.' Am. Compl. ¶¶ 39–41, but without a lien, she is merely a general creditor and therefore cannot maintain a cause of action for civil conspiracy to prevent collection of her judgment. Thus, her civil conspiracy claim cannot stand on the basis of her fraudulent transfer claim, and the Court dismisses this claim as against PP Holdings, Innov8tive, and LCE because Dalton asserts no other potential predicate tort against these entities.

However, because the Court held Dalton successfully stated a claim for intentional interference with existing contract against Lohner, LaCore, Grace, and Brooks, the Court concludes that there is a sufficient predicate tort upon which a civil conspiracy claim can stand as to these defendants. The Court therefore denies the motions to dismiss the civil conspiracy claim against them.[4]

### IV. THE COURT DENIES THE MOTION TO DISMISS FOR FAILURE TO JOIN A REQUIRED PARTY

---

[4] Defendants argue that there is a lack of predicate tort for conspiracy, on the assumption that Dalton's intentional interference claim fails. *See* Defs.' Br. 16–17; Lohner's Br. 8–9. They do not argue that any of the five elements are not satisfied by Dalton's allegations. Accordingly, the Court does not address that issue.

In addition to their motion under Rule 12(b)(6), defendants PP Holdings, Innov8tive, LCE, LaCore, Grace, and Brooks also move to dismiss this action on the basis that Dalton failed to join a required party, Perfectly Posh. Defs.' Br. 17–19. However, the Court holds that Perfectly Posh, a defunct LLC, is not a required party under Rule 19(a) and therefore denies the motion to dismiss under Rule 12(b)(7).

The first step of the Rule 12(b)(7) inquiry requires the Court to determine whether the party is necessary under Rule 19(a). Rule 19(a) provides that a party is necessary when "the court cannot accord complete relief among existing parties" without the party, or when the party "claims an interest relating to the subject of the action" and its absence would impair its ability to protect its interest or would subject an existing party to a risk of "double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a).

Here, Perfectly Posh is a defunct LLC. *See* Pls.' Am. Compl. ¶ 55. There is no indication that the Court cannot afford complete relief among the existing parties without Perfectly Posh. Under Texas law, Dalton is free to proceed on her fraudulent transfer claims against the first transferee of the assets, any subsequent transferee of the assets other than a good faith purchaser, or "the person for whose benefit the transfer was made." Tex. Bus. & Com. Code § 24.009(b). And her claims for alter ego liability, intentional interference, and civil conspiracy likewise do not require Perfectly Posh's presence in the suit for complete relief to be afforded.

And then, because Perfectly Posh is an expired entity, it cannot claim an interest in the subject of the action that its absence would impair. Likewise, defendants do not point to any risk that they would be subject to double, multiple, or inconsistent obligations

MEMORANDUM OPINION AND ORDER – PAGE 22

without Perfectly Posh's presence. Instead, they simply argue that "Perfectly Posh is a necessary and indispensable party because Plaintiff's fraudulent transfer claim alleges that Perfectly Posh made a fraudulent transfer of assets to Innov8tive." Defs.' Br. 18. However, given Perfectly Posh's defunct status, the Court concludes that it is not a necessary party here under Rule 19(a) and therefore denies the motion to dismiss under Rule 12(b)(7).

## V. THE COURT DENIES THE MOTION TO DISMISS UNDER RULE 4(M)

Finally, Defendants PP Holdings, Innov8tiuve, LCE, LaCore, Grace, and Brooks move to dismiss this case without prejudice under Rule 4(m) because they were served one day late. Defs.' Mot. 19. However, given that all defendants have been served and the service was only one day late, the Court declines to dismiss the case on this basis.

Rule 4(m) provides that a court must either "dismiss the action without prejudice . . . or order that service be made within a specified time" if a defendant is not served within 90 days of filing the complaint. FED. R. CIV. P. 4(m). Here, Dalton filed her original complaint on Mar. 20, 2024. Pls.' Compl. 19 [1]. Ninety days after Mar. 20, 2024, was June 18, 2024. However, Dalton failed to serve the defendants until June 19, 2024. Defs.' Br. 19; Pls.' Resp. Br. 25. A dismissal without prejudice at this point in the case would be a waste of judicial and party resources and serves no purpose given that all defendants have long since been served. Accordingly, the Court, in its discretion, declines to dismiss this case on the basis of one-day-late service and grants Dalton leave to serve the defendants in the time she did. *See Thompson*, 91 F.3d at 21 (noting that "the plain language of rule 4(m) broadens a district court's discretion by allowing it to extend the time for service even when a plaintiff fails to show good cause.").

MEMORANDUM OPINION AND ORDER – PAGE 23

CONCLUSION

Upon reviewing the operative complaint, the Court holds that Dalton has failed to state the following claims: (1) fraudulent transfer against Brooks (and Lohner by withdrawal); (2) alter ego liability against Brooks; (3) successor liability (by withdrawal); (4) intentional interference with prospective business relations; and (5) civil conspiracy against PP Holdings, Innov8tive, and LCE. The Court therefore grants the motions to dismiss these claims but otherwise denies the motions to dismiss. The Court also denies the motion to stay as moot.

This dismissal is without prejudice, and the Court grants leave for Dalton to amend her complaint within thirty (30) days of this Order. If Dalton wishes to amend her complaint based on information obtained in discovery more than 30 days after this Order, she must either obtain the defendants' consent or move for leave to amend.

Signed February 4, 2025.

David C. Godbey
Chief United States District Judge

MEMORANDUM OPINION AND ORDER – PAGE 24